**MARYLAND NATIONAL BANK,**
Trustee

v.

**SHAFFER STORES COMPANY.**

Civ. A. No. 15954.

United States District Court
D. Maryland.
April 26, 1965.

David R. Owen, Semmes, Bowen & Semmes, Baltimore, Md., for plaintiff.

William A. Agee, Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

This suit was brought in the Superior Court of Baltimore City by the successor Trustee under an Indenture agreement dated May 7, 1954 between Shaffer Stores Company, a Pennsylvania corporation, predecessor obligor; Fidelity-Baltimore National Bank and Trust Company, predecessor Trustee; and The Levering Coffee Company of Baltimore City, a Maryland corporation, Guarantor, to recover the principal amount of all remaining, outstanding debentures issued under said Indenture agreement by Shaffer Stores Company, the Pennsylvania corporation, plus interest, together with various expenses. The defendant corporation, a Delaware corporation, is, by various mergers, the successor corporation to the Pennsylvania corporation of the same name which executed the Indenture referred to above, and as such surviving corporation has succeeded to the liability, if any, originally incurred thereunder by the Pennsylvania corporation. Substituted service of process was made on the defendant Delaware corporation pursuant to the provisions of Article 23, sections 92(d), 96(d), 97 and 98 of the Annotated Code of Public General Laws of Maryland, 1957 Edition. The defendant Delaware corporation appeared specially in the State court, filed a motion to quash the service of process and to dismiss, and

petitioned for removal of the suit against it to this court. Removal has been effected. Jurisdiction is based upon diversity of citizenship. The requisite amount is in controversy.

Defendant's motion to quash service of process and to dismiss, filed in the State court and now pending in this court, raises two questions:

1. May, under the facts of this case, the provisions of section 92(d) of Article 23, purporting to subject a foreign corporation "to suit in this State by a resident of this State or by a person having a usual place of business in this State on any cause of action arising out of a contract made within this State * * * whether or not such foreign corporation is doing or has done business in this State" be constitutionally applied so as to subject the defendant corporation to the jurisdiction of this court?

The defendant corporation contends that it has had no contacts whatsoever with the State of Maryland, that it has done no business here, that it has no representative here and that it has made no contracts, including the one on which the present suit is brought, in this State. Defendant urges that its sole contact with this State is that it is the successor, by several corporate mergers, to an alleged obligor under a contract concededly made in Maryland and that under these circumstances it would be a denial of due process to subject it to suit in Maryland. Defendant does not deny that because of the various mergers herein involved it has assumed the contractual responsibilities and obligations originally undertaken by Shaffer Stores Company, a Pennsylvania corporation. It does deny that its assumed obligations and liabilities, if any, may be enforced against it in the same manner and to a like extent as they could have been enforced against the Pennsylvania corporation which actually executed the Indenture agreement in question, had that corporation continued in existence.

The parties have stipulated as to the corporate ancestry of the present defendant. The Pennsylvania Shaffer Stores Company was incorporated in the Commonwealth of Pennsylvania on August 14, 1919. It executed the Indenture in question in the State of Maryland on May 7, 1954. On April 21, 1961 the Pennsylvania corporation duly registered to do interstate and foreign business in the State of Maryland and appointed as its resident agent, Corporation Trust Company, First National Bank Building, Baltimore, Maryland. On April 17, 1961 a corporation of the same name as the Pennsylvania Shaffer Stores Company was organized in the State of Delaware, and the Pennsylvania corporation was merged into the Delaware corporation pursuant to an agreement of merger filed in Delaware on May 29, 1961 and Articles of Merger filed in Pennsylvania on June 16, 1961, the Delaware corporation being the surviving corporation. On September 28, 1961 the merged Pennsylvania Shaffer Stores Company "withdrew from the State of Maryland and thereby terminated" (paragraph 1, page 2, lines 3 and 4) its previous registration to do interstate and foreign business in the State of Maryland. On the same date the State Department of Assessments and Taxation issued its "Certificate of Withdrawal of Foreign Corporation". The surviving Delaware corporation, Shaffer Stores Company, then merged with Shafstor, Inc., a New York corporation, creating Shaffer Stores Company, a second Delaware corporation pursuant to an Agreement of Consolidation filed in Delaware on April 27, 1962 and Certificate of Consolidation filed in New York on April 27, 1962. The resulting Shaffer Stores Company was merged into a Delaware corporation known as S.S.C., Inc., on July 23, 1962, pursuant to Certificate of Ownership and Merger filed in Delaware on August 6, 1962. On August 6, 1962 S.S.C., Inc., changed its name to "Shaffer Stores Company", the corporate entity now defendant in the present suit.

Certain other factors shedding light on the historical contacts and interests which the original obligors to the Indenture and their successors had in Maryland as well

as their present corporate make-up have also been stipulated to by counsel:

"The only material asset of defendant is 141,055 shares of the common stock of R. C. Williams & Company, Inc., a New York corporation, representing approximately 46% of the issued and outstanding stock of said corporation. There are approximately 1,002 holders of the common stock of R. C. Williams & Company, Inc., the remaining 54% of which is widely and publicly held. Defendant is reported as the controlling person of R. C. Williams & Company, Inc., under the Federal Securities and Exchange Act. R. C. Williams & Company, Inc., through subsidiaries, is in the business of the roasting and sale of coffee and the blending and packaging of tea and in the slaughtering, processing and sale of meat and meat products.

"The Levering Coffee Company, a Maryland corporation which signed the said Indenture as guarantor, was incorporated in 1919 and on April 24, 1961, was merged into Shaffer Stores Company, a Pennsylvania corporation. As a result of the transaction referred to in the Declaration [the Indenture], Shaffer Stores Company, the Pennsylvania corporation, acquired and continued to hold all of the capital stock of The Levering Coffee Company, the Maryland corporation.

"The Levering Coffee Company, a Delaware corporation, qualified to do intrastate business in the State of Maryland on May 7, 1958, and appointed as Resident Agent the said Corporation Trust Company. The Levering Coffee Company, the Delaware corporation, has remained qualified in the State of Maryland and currently lists as its principal office in this State 1200 66th Street, Baltimore, Maryland. It is engaged in the business of roasting and selling coffee. Said corporation is a wholly-owned subsidiary of R. C. Williams & Company, Inc.

"The principal office of Defendant and of The Levering Coffee Company, the Delaware corporation, is 2 Penn Place, Pelham Manor, New York.

"The President and Chairman of the Board of Defendant and of R. C. Williams & Company, Inc. and of The Levering Coffee Company, the Delaware corporation, is Arthur R. Lorch. The Secretary-Treasurer of said three corporations is Catherine Laughlin. The said Lorch and Laughlin are likewise directors of said three corporations. The said Lorch owns or controls all of the capital stock of Defendant."

Defendant takes the postion that because of the various transactions outlined above, it is insulated from the provisions of Article 23, section 92(d).

Article 23, section 92(d) purports to subject a foreign corporation to suit in Maryland "on any cause of action arising out of a contract made within this State." Defendant would have this court read into the statute the additional qualification that a foreign corporation is subject to suit in this State *only* on a cause of action arising out of a contract initially made *by said foreign corporation* itself within this State and would, accordingly, have the court find the defendant not amenable to suit in Maryland. The court does not so construe the statute. First, defendant comes within the literal wording of the statute. It is being sued on a contract made in Maryland. Secondly, it is not unreasonable to subject a corporation to a suit in Maryland on a contract made in Maryland where the corporation has voluntarily and by its own acts assumed performance under that contract. Otherwise the entire intent and purpose of Article 23, section 92(d) could easily be subverted merely by having one foreign corporation execute a contract in Maryland and another foreign corporation outside of Maryland undertake or assume (in the instant case by corporate merger) the performance of the contract executed in Maryland without thereafter being subject to suit in Maryland on a cause of action arising therefrom. Finally, in the

instant case, general considerations aside, the defendant corporation is by a reading of the statutory provisions of the state of its incorporation expressly made amenable to suit in Maryland. Defendant, the surviving corporation of the merger with the Pennsylvania corporation which executed the contract, is a Delaware corporation as were all intermediate surviving corporations of the various mergers. Section 259 of the Delaware Corporation Law (Delaware Code Annotated, Title 8, section 259) provides that upon corporate merger, the surviving corporation shall have all the rights of the constituent corporations and shall be "subject to all the restrictions, disabilities and duties" of each of the merging corporations. This the defendant does not dispute. However, the Delaware Corporation Law further provides that *all rights of creditors * * * shall be preserved unimpaired, and all debts, liabilities and duties* of the respective constitutent corporations *shall* thenceforth *attach to* said resulting or *surviving corporation,* and *may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.*" (Emphasis supplied.) This provision when read in connection with Article 23, section 92 (d) authorizing suit in Maryland on a cause of action arising out of a contract made within this state expressly authorizes the present suit against the defendant corporation and substituted service of process as the plaintiff only seeks in the instant suit to enforce the liabilities, if any, attaching to the surviving defendant corporation as if said liabilities had been *contracted by defendant.*

However, the Maryland cases construing section 92(d) of Article 23 have recognized that this statute, while valid under certain circumstances, can not be indiscriminately applied in all cases, despite its literal wording. The late Judge W. Calvin Chesnut in Johns v. Bay State Abrasive Products Company, D.C.Md. 1950, 89 F.Supp. 654, 662 stated his conclusions as follows:

\* \* \* \* \* \*

"Without unduly extending this opinion, the result of my reflection about the statute is that it can properly be given valid application to a limited extent. Consistent with the approach adopted by Chief Justice Stone in the Shoe Company case, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, I think it will be necessary to test the proper application of the statute by a process of inclusion and exclusion hereafter to the several factual situations as they are presented. The conclusion in each case must be based upon a fair consideration of all the relevant factors, including, among others, the nature and extent of the corporation's actual activities within the State, and whether sporadic or merely casual or continuous over a substantial period of time, and its consequent points of contact or lack thereof with the State, the nature of the particular transaction, contract or tort relied upon by the resident plaintiff occurring within the State, and how such activities affect the general policy of the State with regard to the subject matter, and also importantly the relevant inconvenience to the respective parties dependent upon whether the litigation should be sustained in the local forum or only in some other jurisdiction."

While Judge Chesnut had before him a tort claim, his opinion was cited and his reasoning followed by the Court of Appeals of Maryland in the leading case in this State applying section 92(d) of Article 23 to a cause of action arising out of a contract made in Maryland. (Compania De Astral, S.A. v. Boston Metals Company, 1954, 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646.) Thus, although defendant corporation comes within the literal wording of the statute, this does not dispose of the motion pending before this court. The validity of the statute attacked, as it is, on the ground that to apply it to the instant defendant would constitute a denial of due process must be determined, and

can only be determined, by reference to the factual background of this particular case.

The facts as to the nature of the particular contract herein involved are not in dispute, having been established in part by affidavit and in part from the face of the record in the instant case. The Indenture was executed and acknowledged by authorized parties in Baltimore, Maryland on behalf of the predecessor Trustee, a corporation organized and existing under the laws of the United States of America and having its principal office and place of business in the State of Maryland; on behalf of Shaffer Stores Company, the Pennsylvania corporation, predecessor obligor; and on behalf of The Levering Coffee Company, a Maryland corporation, Guarantor. The plaintiff, the successor Trustee, is a corporation organized and existing under the laws of the United States of America and having its principal office and place of business in Maryland. In addition to the execution of the contract in Maryland the parties, all of which were corporate residents of Maryland except for the obligor, specifically agreed that the Indenture should be construed according to, and should be governed by, the laws of the State of Maryland (Article VIII, section 2 of Indenture at page 21). All of the debentures issued under the Indenture were issued to residents of Maryland and all outstanding debentures are still held by residents of Maryland. The debentures were issued in exchange for shares of capital stock held by said Maryland residents in The Levering Coffee Company of Baltimore City, a Maryland corporation. Under the Indenture, the Shaffer Stores Company, the predecessor corporation to defendant, issued debentures promising to pay principal and interest to the Trustee in the aggregate principal amount of $354,460.00 with interest at the rate of five per cent per annum on May 7 of the years 1955 to 1966 (both inclusive). Specifically the yearly payments were to be made to the Trustee "at the main office of the Trustee" in Baltimore, Maryland (Indenture,

page 2, line 4). The Indenture agreement required that a copy of the Indenture be kept at and made available for inspection at the office of the Trustee in Baltimore, Maryland (Indenture, page 2, line 21 to 22). The debentures issued under the Indenture could be registered only at the Trustee bank in Baltimore, Maryland (Indenture, Form of Registration, page 4). The registration books kept for that purpose were required to be retained at the office of the Trustee bank in Baltimore, Maryland. (Indenture, page 3, line 12.) It was further provided that any successor Trustee, whether appointed by Shaffer Stores Company or by the debenture holders, should be a trust company or a national bank in good standing, doing business in the City of Baltimore, the State of Maryland. (Indenture, page 19, section 8, lines 24 to 25.) Shaffer Stores Company in addition was required to submit consolidated balance sheets and consolidated statements of income and surplus, of itself and its subsidiaries, quarterly each year to the Trustee at Baltimore, Maryland. This then was the undertaking of the parties in 1954 and at that time spelled out numerous and substantial contacts to be anticipated with the State of Maryland from May 1954 through May 1966, a period of some twelve years.

In fact, there appears to have been a compliance with the requirements of the Indenture until May 7, 1964 at which time the defendant Delaware corporation, having succeeded to the liability incurred by the Pennsylvania corporation of the same name, allegedly failed to pay the principal and the interest becoming due on that date. Prior to that date the contacts with the State of Maryland which had been anticipated by the Indenture of 1954 were actually had. Not only did the predecessor Pennsylvania corporation perform from May 7, 1954 through May 7, 1961 but its successor corporations thereafter performed the obligations undertaken pursuant to the Indenture previously executed in the State of Maryland. Payments of principal and interest were made to plaintiff by instant defend-

ant in 1963. Defendant also supplied plaintiff in Baltimore, Maryland with the necessary balance sheets and income statements required quarterly.

How then do these contacts meet or fail to meet the "minimum contacts" test announced by the Supreme Court of the United States in International Shoe Company v. Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, a test embraced by and applied by the Court of Appeals of Maryland in Compania De Astral, S.A. v. Boston Metals Company, 1954, 205 Md. 237, 259, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, to the provisions of section 92(d) of Article 23? In essence, in Compania De Astral the Court of Appeals of Maryland stated that under section 92 the sole test of the propriety of subjecting a foreign corporation to suit in Maryland is no longer whether or not the acts of the foreign corporation within the State amount to "doing business". Nevertheless the statute still exempts a foreign corporation not doing and not having done business within the state from broad amenability to suit. The explicit wording of the statute points up the narrowness of the field in which such a corporation is subject to suit in Maryland—that is, only to a suit by a resident or a person having a regular place of business in Maryland on a cause of action arising out of a contract made in Maryland. The instant suit meets these requirements. However, the Court of Appeals of Maryland further recognized that even though by the terms of the statute the mere execution of a contract in Maryland would support in personam jurisdiction over a foreign corporation the requirements of due process are not met unless the "minimum contacts" test announced in International Shoe Company v. Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, is met.

The contract in question contemplated and required numerous, substantial and continuing contacts with the State of Maryland. The contract was executed in Maryland. The Trustee was a national bank having its principal office and business in the State of Maryland. The Guarantor under the contract was a Maryland corporation. The Indenture provided for the exchange of stock in a Maryland corporation held by Maryland residents for debentures to be issued to said Maryland residents, said debentures to be paid in annual installments of principal and interest to the Trustee at its principal place of business in Maryland and to be disbursed by it in Maryland. The physical documents embodying the agreement including the Indenture and the registration books showing the names of the owners of the debentures were to be kept at and be made available for inspection at the office of the Trustee in Maryland. The parties to the Indenture specifically agreed that its provisions were to be construed by the laws of Maryland. Any financial statements required of the debtor were to be submitted to the Trustee in Maryland. A substantial amount of money, $354,460.00 in principal, plus interest at the rate of five per cent per year, was involved and the contract was to have a life of some twelve years.

Under these facts, if the original Pennsylvania corporation, which executed the Indenture, were the defendant in this action; if the original Pennsylvania corporation had allegedly breached the contract in suit; and if the mergers previously referred to had not taken place, there could be no question but that the requirement of "minimum contacts" with the State of Maryland had been met. The present defendant has, however, urged that the fact that the defendant came into being through a series of mergers requiries that the activities of its predecessor corporations in Maryland should be disregarded and that the contacts which the present defendant alone has had with the State of Maryland should be viewed in isolation from those of its predecessor corporations, thus, it is argued, requiring the conclusion that the statute in question as here attempted to be applied is unconstitutional. Apart from defendant's own activities in Maryland under the contract, the defendant

misconceives the entire legislative scheme behind the various alternative and complementary provisions of section 92. By making the test of jurisdiction that of substantial contacts by the defendant foreign corporation with the State of Maryland, the defendant would quite possibly have the court read back into section 92(d) the requirement that the foreign corporation be doing or has done business in this State, a requirement specifically omitted from this subsection although present in other subsections of section 92.

■ All that is necessary in the instant case to meet the due process objection is that the contract, *not the obligor under the contract,* have a substantial connection with the State of Maryland. As was said by the Supreme Court of the United States in McGee v. International Life Insurance Company, 1957, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, "It is sufficient for purposes of due process that the suit was based on a *contract which had substantial connections with that State."* (Emphasis supplied.) That this language was carefully, advertently and precisely chosen is shown by the facts of that case. A resident of California purchased a life insurance policy from an Arizona corporation. Some four years later a Texas corporation agreed with the Arizona corporation to assume the latter corporation's insurance obligations. The Texas corporation then mailed a re-insurance certificate to the insured which was accepted by him. The insured thereafter, until his death, paid premiums by mail from his California home to the Texas corporation's home office. Neither the Arizona nor the Texas corporation had ever had any office or agent in California or done any business in that State aside from the one policy in question. Upon a refusal by the Texas corporation to pay the beneficiary's claim it was held by the Supreme Court of the United States that the beneficiary could validly bring suit against the Texas corporation under a California State statute which subjected foreign corporations to suit in California on insurance con-

tracts with residents of that State even though such corporations could not be served with process within its borders. And it might be noted in passing that this California statute was held to be constitutionally applied to the foreign corporation even though the statute did not become effective until after the foreign corporation had assumed the obligation of the insurance policy. To this court the legal significance of the situation which arises when a foreign corporation assumes the insurance obligations of another foreign corporation is no different from the situation which arises when a foreign corporation through a series of mergers voluntarily and by operation of law assumes any other contractual rights and liabilities of its predecessor corporations. There is no intimation in the McGee case that a different result would have obtained had the statute involved covered contracts other than contracts of insurance. The United States Court of Appeals for the Fourth Circuit in a recent opinion has characterized the McGee decision as the full embracement of the concept originally announced by the Supreme Court in the International Shoe case that a single contact giving rise to a cause of action may be sufficient to warrant a state's assertion of jurisdiction over a foreign corporation. (Gkiafis v. Steamship Yiosonas, 4 Cir. 1965, 342 F.2d 546).

To repeat, in the instant case, it "is sufficient for purposes of due process that the suit * * * [be] based on a contract which had [and has] substantial connection with * * * [this] State." (McGee v. International Life Insurance Company, 1957, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L.Ed.2d 223.) In the McGee case the Supreme Court found a substantial connection with the State of California arising out of the fact that the contract was delivered in California, the premiums were mailed from California and the insured was a resident of that State when he died. Commenting that it might be inconvenient to the insurer if it were held amenable to suit in California, the Supreme

Court found such inconvenience nothing which would amount to or rise to the stature of a denial of due process. Under the facts of the instant case this court finds that the contract before it has more numerous contacts and more substantial connection with the State of Maryland than the contract considered by the Supreme Court in the McGee case and little or no inconvenience to the defendant corporation arising out of amenability to suit in Maryland. It is presently subject to suit in the neighboring state of Delaware. The Levering Coffee Company of Delaware, a wholly owned subsidiary of R. C. Williams & Company which is in turn controlled through the ownership of stock by the defendant corporation, has qualified to do intrastate business in the State of Maryland, has appointed a resident agent for the service of process in Maryland and is, accordingly, subject to suit in the State of Maryland. The interlocking directorship and management of these three corporations although not perhaps enough to require a piercing of the corporate veil so as to subject defendant to suit in Maryland, at least suggests that amenability to suit in this State would impose little or no hardship upon the defendant.

Accordingly, the court answers the first question raised by defendant's motion in this case in the affirmative. Section 92 (d) of Article 23 may be constitutionally applied under the facts of this case so as to subject the defendant corporation to the jurisdiction of this court. There then remains the second question for consideration.

■ 2. Does the fact that sections 96(d), 97 and 98 do not require the securing of a return receipt of the notice of suit sent by registered mail and the filing of said receipt with the Clerk of the Court as a prerequisite to valid service—as is required by the Non-resident Motor Vehicle Statute, Article 66½, section 115, the Waterway Statute, Article 75, section 77 and the statute providing for service on non-resident individuals doing business or work within the state,

Article 75, section 78—render these sections of Article 23 unconstitutional as applied to the defendant corporation in the instant case?

The parties have again stipulated as to the pertinent and controlling facts:

"8. The Maryland State Department of Assessments and Taxation mailed a copy of the Declaration and Summons in this case to the Defendant at 2 Penn Place, Pelham Manor, New York. On October 22, 1964, the Department received and now holds in its file the registered mail return receipt #664398 signed for the Defendant by R. Pagano on October 21, 1964.

"9. It has at all times been the practice of said Department and of its predecessor to ask for registered mail return receipts and to keep the receipts in its file. If a notice sent by registered mail to the address certified by the non-resident corporation or given to the Department by the plaintiff's attorney is returned undelivered, the Department notified [sic] the plaintiff's attorney and the Sheriff or U. S. Marshal. In the exceptional case where neither the mailing address nor State of incorporation is known, the Department keeps the papers in its files."

The contention that the statutory provisions relating to notice in Article 23 do not comply with constitutional requirements is based upon the holding in Leach v. Farnsworth & Chambers Company, D.C.Colo. 1964, 231 F.Supp. 157, that, where the State statute made no provision as to the disposition to be made by the Secretary of State (in Maryland, the agency involved would be the Department of Assessments and Taxation) of the return receipt, the notice provision violated Colorado's Constitutional due process clause. The Colorado substituted service of process statute provided for service upon the Secretary of the State and for mailing by the Secretary of State of notice of such service and a copy of the process so served to the defendant at its

last known address by registered mail with return receipt requested but without any provisions as to what disposition should be made by the Secretary of State of the return receipt when and if received. The same attack as was made in the Colorado case has been unsuccessfully made on the Maryland statutory provisions regarding substituted service of process on a foreign corporation at least twice before in this court. Chief Judge Roszel C. Thomsen of this court gave thorough and careful consideration to the question involved in Speir v. Robert C. Herd & Co., D.C.Md. 1960, 189 F. Supp. 432, and concluded that where the form of service provided for by the statute is reasonably calculated to bring notice of the suit to the foreign corporation the statute is valid. Judge Thomsen further held that the question of whether or not the form of service is so reasonably calculated should be decided on the basis of normal circumstances and not merely because in any given case notice was actually promptly sent and received. On facts identical to those set out in the stipulation above he upheld the validity and constitutionality of sections 96(d), 97 and 98 under which service was made in the instant case. This court was and is in complete accord with Judge Thomsen's reasoning and conclusions. Indeed, in the case of Gkiafis v. Steamship Yiosonas, D.C.Md. 1963, 221 F.Supp. 253, this judge so stated. Although this case was reversed on other grounds, the United States Court of Appeals for the Fourth Circuit affirmed that part of the opinion upholding the constitutionality of the Maryland procedure. (Gkiafis v. Steamship Yiosonas, 4 Cir. 1965, 342 F. 2d 546; see also on the question of the importance of the likelihood of the receipt of notice: Karlsson v. Rabinowitz, 4 Cir. 1963, 318 F.2d 666, 668.)

Accordingly, the second question posed in this case is answered in the negative. Sections 96(d), 97 and 98 of Article 23 are not unconstitutional as applied in this case.

The motion to quash service of process and to dismiss will be denied.