**James K. HAGAN and Carol M. Hagan, Plaintiffs–Appellees,**

v.

**LIBERTY LOAN CORPORATION OF AMES, IOWA, Defendant–Appellant.**

No. 86–1322.

Court of Appeals of Iowa.

March 9, 1988.

Raymond R. Stefani II of Gray, Stefani & Mitvalsky, Cedar Rapids, and Keith Stapleton, Cedar Rapids, for defendant-appellant.

Peter C. Riley, Tom Riley, and Mary K. Hoefer of Tom Riley Law Firm, Cedar Rapids, for plaintiffs-appellees.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

On June 12, 1981, James and Carol Hagan initiated the present action, seeking a declaratory judgment as well as damages allegedly resulting from the alteration by Liberty Loan Corporation of a quit claim deed submitted by previous vendees of a property which the Hagans were purchasing by contract from Liberty. Following an amendment to the petition and a grant of the requested declaratory judgment, the matter was tried to a jury on Hagans' allegations of slander of title and fraudu-

lent misrepresentation. The jury found for the Hagans on both issues and awarded $32,000 in actual and $32,000 in punitive damages. Unsuccessful motions for new trial and judgment *non obstante veredicto* preceded Liberty Loan's present appeal. Our review is limited to the correction of legal errors. Iowa R.App.P. 4.

I.

Liberty Loan contends the district court erred in overruling its motion for directed verdict on both the slander of title and the fraudulent misrepresentation issues. In determining whether a jury question was engendered on these issues, we apply the same principles as were applied by the district court in ruling on the motion. *See Oberreuter v. Orion Industries, Inc.,* 398 N.W.2d 206, 209 (Iowa App.1986). We view the evidence in the light most favorable to the nonmoving party, regardless of whether such evidence is contradicted, to determine if reasonable minds could differ on the issue. *Harvey v. Palmer College of Chiropractic,* 363 N.W.2d 443, 444 (Iowa App.1984). If reasonable minds could differ on the issue, it is one for the jury. *Mid–Country Meats v. Woodruff–Evans Construction,* 334 N.W.2d 332, 335 (Iowa App.1983). A directed verdict is appropriate in cases in which each element of a claim is not supported by substantial evidence. *Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986). The trial court is vested with considerable discretion in determining whether evidence is sufficient for jury submission. *Business Ventures v. Iowa City,* 234 N.W.2d 376, 383 (Iowa 1975).

■ At trial, Liberty Loan objected to those instructions given by the district court which defined both causes of action. With respect to the fraudulent misrepresentation cause of action, Liberty Loan objected that the instruction "is lacking any evidentiary support," and "would be improper and confusing and misleading to the jury." With respect to the instructions defining the slander of title action, Liberty Loan objected that "[t]he instruction ... unduly emphasizes the contentions of slan-

der of title ... is duplicatous and prejudicial ... and would effectively deny ... this Defendant a fair trial...." These objections do not allege that the instructions incorrectly define these causes of action. *See Froman v. Perrin*, 213 N.W.2d 684, 689–90 (Iowa 1973) ("the real criterion [for the adequacy of an objection to jury instruction to preserve error] is whether the objection alerted the trial court to the claimed error."). Accordingly, these definitions become the law of the case. *Id.* at 689.

The instructions stated the elements of a slander of title claim as follows:

(1) The uttering and publication of slanderous words;

(2) That they were false;

(3) That they were malicious;

(4) That Plaintiff sustained special damages; and

(5) That Plaintiff has an estate or interest in the property slandered.

The instructions also provided that "malice ... may ... result from a reckless or wanton disregard of the rights of others." Our cases provide that "slander," in this context, may consist of written statements when speaking of disparagement of title to real estate. *Belcher v. Little*, 315 N.W.2d 734, 736 (Iowa 1982).

■ The record contains evidence from which, we believe, a jury could find the following factual scenario. Liberty Loan received a quit claim deed from previous vendees of the challenged property who had defaulted on certain financial obligations to Liberty Loan and, as a result, had surrendered the property to Liberty Loan. Prior to recording the deed and subsequent to the contract sale to the Hagans, Liberty Loan altered the quit claim deed by adding the following language: "This instrument is a deed of trust; it is being filed to secure an obligation and is extempt [sic] from transfer tax and a declaration of value statement. Section 428.-2(8)." This notation effectively converted the outright conveyance into a deed of trust. The Hagans subsequently accepted a written offer to sell the property at a profit. The prospective purchasers applied for a loan, and the resulting title opinion revealed what now appeared to be the previous purchasers' outstanding equitable interest. The earlier (defaulting) purchasers refused to sign a warranty deed concerning the property and demanded payment in exchange for signing another quit claim deed. The party to which the Hagans had proposed to sell the property balked because of these problems with clearing title, and the sale fell through.

We cannot say the district court abused its discretion in submitting the slander of title action to the jury on this record.

Similar reasoning leads us to reject Liberty Loan's fraudulent misrepresentation claim. The instructions set forth the elements of the claim as follows:

(1) That Liberty Loan made a representation that the quit claim deed from the Mathenys was a transfer for security purposes or that Mr. and Mrs. Hagan would receive clear title to the property upon payment in full of the contract purchase price.

(2) That the representation was false.

(3) That the representation was material to the transaction.

(4) That the representation was made with scienter, that is, with knowledge of its falsity.

(5) That Liberty Loan intended to deceive Mr. and Mrs. Hagan and others relying on the statement.

(6) That Mr. and Mrs. Hagan or others relied on the statement.

(7) That Mr. and Mrs. Hagan suffered damages and the amount thereof.

In addition, the instructions provided both that "[a] result is intended if the maker ... acts in reckless disregard of whether his representation is true or false," and that "[a] false statement ... when recklessly asserted, is evidence of intent to deceive."

We think the record evidence, sufficiently outlined above, justifies the submission of the fraudulent misrepresentation claim. There is adequate evidence from which a jury might find that Liberty Loan knew of the misrepresentation connected with the quit claim deed and that the misrepresenta-

tion was relied upon and resulted in damages to the Hagans. We find no error.

## II.

Liberty Loan contends the instructions presenting the definitions of the fraudulent misrepresentation and slander of title claims lacked evidentiary support and inaccurately stated the law. We have adequately dealt with both these contentions above. To restate, we think adequate evidence supports giving the instructions; Liberty Loan's contention that the instructions "fail to accurately state the principles of law applicable to this lawsuit" was not raised at trial and is, accordingly, not preserved. *Froman*, 213 N.W.2d at 689–90.

Liberty Loan maintains the district court erred in failing to give its requested instruction which stated, in essence, that a contract vendee in default may not complain of any defect in the vendor's title and that the contract vendor is required to convey marketable title only at the time the full contract price is paid. This latter legal principle was adequately contained in the instructions given the jury which stated, in pertinent part, the Hagans' claim that Liberty Loan represented to them only that they "would receive clear title to the property upon payment in full of the contract purchase price."

With respect to the former portion of the requested instructions, we think the district court was correct in refusing to submit Liberty Loan's proposal. It plainly misses the point of the Hagans' case. Their complaint was not directed to a defect *per se* in Liberty Loan's title. Rather, their complaint was of Liberty Loan's allegedly fraudulent and slanderous misrepresentation of the title's condition. We find no error.

## III.

Liberty Loan contends the jury awarded excessive and unsupported damages. Our law requires only that the record contain a reasonable basis from which the amount of actual damages can be inferred or approximated. *Larsen v. United Fed. Sav. & Loan Ass'n*, 300 N.W.

2d 281, 288 (Iowa 1981). Similarly, an award of punitive damages is appropriate when one party engages in wrongful conduct committed with a willful disregard of another's rights. *Midwest Management Corp. v. Stephens*, 353 N.W.2d 76, 82 (Iowa 1984).

In reviewing the adequacy of a damages award, the determinative question is whether under the record the judgment effects substantial justice between the parties. *Kautman v. Mar–Mac Community School*, 255 N.W.2d 146, 148 (Iowa 1977). In the present case, we think that it did.

AFFIRMED.