**James K. HAGAN and Carol M. Hagan, Appellees,**

v.

**VAL–HI, INC. f/k/a LLC Corporation, A Successor in Interest of Liberty Loan Corporation of Ames, Iowa, Appellant.**

No. 91–63.

Supreme Court of Iowa.

April 15, 1992.

Keith Stapleton and Raymond R. Stefani II of Gray, Stefani & Mitvalsky, Cedar Rapids, for appellant.

Peter C. Riley and Nestor Lobodiak of Tom Riley Law Firm, P.C., and David J. Smith of Swift, Mundy & Assoc., Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

The district court found a successor nonresident corporation liable for an unpaid judgment against its predecessor Iowa corporation. The nonresident corporation

claims: (1) the trial court did not have personal jurisdiction over it; (2) interest was incorrectly calculated by the court; and (3) the judgment must be limited to the value of the assets transferred by the Iowa corporation to the successor corporation. The parties do not dispute that a successor corporation is responsible for the debts of a predecessor corporation after a merger. Because we find personal jurisdiction may be asserted over the nonresident successor corporation, we affirm as modified.

## I. Background.

In June 1981, James and Carol Hagan (together Hagan) filed suit against Liberty Loan Corporation of Ames, Iowa (Liberty). Hagan claimed compensatory and punitive damages based on theories of slander of title and fraudulent misrepresentation.

Liberty was incorporated in the State of Iowa in 1959. A little more than eight months before the suit was filed, Liberty amended its articles of incorporation and changed its name to Liberty Thrift & Finance Corporation (Thrift). In July 1985, Thrift was merged into Oklahoma Morris Plan Company, an Oklahoma corporation (Morris). In May 1986, Morris was merged into Liberty Financial Management Company, a Delaware corporation. The resulting corporation was renamed LLC Corporation (LLC).

The mergers of Liberty into Morris, and the merger of Morris into LLC occurred while the suit against Liberty was progressing through the various civil trial stages. The case was tried to a jury and on June 16, 1986, the district court entered judgment upon the verdict in the amount of $64,000 plus interest and costs. Liberty appealed the judgment.

Because the appellant did not file a supersedeas bond, the appeal did not stay proceedings under the judgment. Iowa R. App. P. 7. Hagan was able to execute on property owned by Liberty. On November 21, 1986, Hagan realized $10,339.24 on a general execution in partial satisfaction of its judgment against Liberty.

While the appeal was pending, LLC merged with a Utah corporation, the Amalgamated Sugar Company. LLC was the surviving corporation and its name was changed to Val-hi, Inc. Val-hi is a Delaware corporation with its principal office in Dallas, Texas. On March 9, 1988, the judgment against Liberty was affirmed. *See Hagan v. Liberty Loan Corp.,* 423 N.W.2d 886 (Iowa App.1988).

In July 1989, Hagan brought the present suit against Val-hi asking judgment for the amount of the judgment obtained against Liberty, including accrued interest and costs.[1] Hagan also alleged that the mergers were fraudulent attempts to avoid liability on the judgment and requested punitive damages. Val-hi denied the allegations and moved for dismissal based on a lack of personal jurisdiction. Iowa R. Civ. P. 104(a). This motion was denied. After hearing, the district court concluded that personal jurisdiction existed and found Val-hi liable for the preexisting judgment against Liberty. The district court also found that the mergers were not fraudulent.

The court entered judgment against Val-hi in the amount of $64,000 together with interest at ten percent from June 12, 1981. On posttrial motion, the court amended its judgment to credit the $10,-339.24, realized as a result of the execution sale in 1986, against the judgment rendered against Val-hi. We now affirm the district court judgment as modified.

Our longstanding scope of review of motions to dismiss for lack of personal jurisdiction is that: "The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law." *Meyers v. Kallestead,* 476 N.W.2d 65, 66 (Iowa 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992) (No. 91–1174) (citation omitted).

---

1. We have long recognized that an action may be brought on a judgment. *See Chader v. Wil-* kins, 226 Iowa 417, 422, 284 N.W. 183, 186 (1939); *Ballinger v. Tarbell,* 16 Iowa 491 (1864).

II. *Personal Jurisdiction.*

■ Val-hi was served with notice pursuant to Iowa Rule of Civil Procedure 56.2. Under this rule, personal jurisdiction extends to the boundaries established by the due process clause of the United States Constitution. *Larsen v. Scholl*, 296 N.W.2d 785, 789 (Iowa 1980).

Generally, when reviewing a challenge to an assertion of personal jurisdiction, we conduct our now standard five-factor analysis to determine if the minimum contacts requirement has been satisfied. *See, e.g., Meyers*, 476 N.W.2d at 67 (citing *Larsen*, 296 N.W.2d at 788). However, the factual nature of this case requires us to use a slightly different analysis. Here, we must decide whether personal jurisdiction may be asserted over a nonresident successor corporation for liabilities originally incurred by a resident constituent corporation where there has been a series of mergers resulting in the successor corporation.

In a merger, two constituent corporations combine to create one corporation. In such a transaction, one of the corporations is usually considered the surviving or successor corporation even though there may be a subsequent name change. *See Rath v. Rath Pack*, 257 Iowa 1277, 136 N.W.2d 410 (1965).

A. Corporate Mergers.

Although we have not previously addressed the jurisdictional questions arising from corporate mergers, the federal courts have. The general rule coming from these cases is that:

> [A]ctions and conduct of a constituent corporation may be attributed to the surviving corporation following a *merger* for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities incurred by the constituent corporation.

*Goffe v. Blake*, 605 F.Supp. 1151, 1154 (D.Del.1985) (emphasis added). *See also Duris v. Erato Shipping, Inc.*, 684 F.2d 352 (6th Cir.1982); *Bowers v. Neti Technologies, Inc.*, 690 F.Supp. 349 (E.D.Pa.1988); *Cole v. Caterpillar Mach. Corp.*, 562 F.Supp. 179 (M.D.La.1983); *Fehl v. S.W.C.*

*Corp.*, 433 F.Supp. 939 (D.Del.1977) (Stating personal jurisdiction would exist in cases of *merger* but finding that the facts did not establish a merger: "An amalgamation of assets, without more, does not constitute a merger."); *Maryland Nat'l Bank v. Shaffer Stores Co.*, 240 F.Supp. 777 (D.Md.1965).

In these cases, the courts have looked to various provisions of the corporate law (including both statutes and case law) of the constituent state to determine if the surviving corporation can seek recovery for monies due its predecessor. The federal courts have also looked at the law to determine whether the successor is liable for claims against the constituent after the merger has taken place. When such rights and obligations are found to exist, the assertion of personal jurisdiction has been upheld on the grounds that the merger itself is a sufficient minimum contact. *Duris*, 684 F.2d at 356 (citing Ohio Rev.Code § 1701.82(A)); *Bowers*, 690 F.Supp. at 359–60 (citing *Savini v. Kent Machine Works, Inc.*, 525 F.Supp. 711 (E.D.Pa.1981) (citing Pennsylvania law)); *Goffe*, 605 F.Supp. at 1155 (citing 8 Del.C. § 259(a) (1983)); *Cole*, 562 F.Supp. at 180 (citing *Boudreaux v. Allstate*, 217 So.2d 439 (La.Ct.App.1968)).

At least two reasons have been advanced for this conclusion. The logic of the first reason is that, if the surviving corporation can avail itself of the benefits of the forum in order to collect amounts due the constituent, it would be only fair that it should also be expected to answer for liabilities incurred by the constituent. *See, e.g., Cole*, 562 F.Supp. at 180–81. The logic of the second reason builds on the logic of the first. A successor foreign corporation that merges with a constituent corporation should reasonably anticipate being haled into court in the constituent corporation's jurisdiction. *See, e.g., Bowers*, 690 F.Supp. at 361 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ We need go no further than Iowa Code section 496A.73 (1985) to reach the conclusion that Iowa can assert personal jurisdiction over a successor corporation

within the bounds of due process. Section 496A.73(4) provided: [2]

> Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; and all property real, personal and mixed, and all debts due on whatever account ... and all other choses in action, and all and every other interest, of or belonging to or due each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed.

At the same time, section 496A.73(5) required:

> Such surviving or new corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated; and any claim existing or action or proceeding pending by or against any of such corporations may be prosecuted as if such merger or consolidation had not taken place.... Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger or consolidation.

*See also Nelson v. Pampered Beef–Midwest, Inc.,* 298 N.W.2d 281, 287 (Iowa 1980).

■ Because Iowa law granted both the privilege to collect amounts due and placed liability on the successor corporation, the merger itself is a sufficient minimum contact warranting the assertion of personal jurisdiction. It is reasonable that a foreign successor corporation should reasonably expect to be called to answer an action in an Iowa court after it has merged with an Iowa corporation. *Burger King Corp.,* 471 U.S. at 471–72, 105 S.Ct. at 2181–82, 85 L.Ed.2d at 540–41. *See also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S.

286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).

The case cited by Val-hi, *Johnston v. Pneumo Corp.,* 652 F.Supp. 1402 (S.D.Miss.1987), as support for its contention, involves an asset purchase rather than a merger. 652 F.Supp. at 1406. As the court in *Fehl* recognized, the rules are different with asset purchases than they are with mergers. 433 F.Supp. at 947–48. *See also* Iowa Code § 496A.74 (1983) (Purchase of all assets followed by dissolution of the selling corporation does not, by itself, constitute a merger.). *Johnston* is therefore inapplicable to the facts in this appeal.

B. Successive Corporate Mergers.

■ Val-hi further argues, if personal jurisdiction can be asserted over a foreign successor corporation after a single merger, the merger of the Iowa corporation was too far removed from the merger resulting in the creation of Val-hi.

In both *Maryland National* and *Fehl,* the courts were presented with an assertion of personal jurisdiction over a successor corporation after a series of mergers had occurred. In *Fehl,* although the facts did not show a merger, the court implied that if they had, successive mergers would not defeat an assertion of personal jurisdiction. 433 F.Supp. at 947–48.

In *Maryland National,* the plaintiff sought to have a Maryland federal court assert jurisdiction over a Delaware corporation. There is a striking similarity between the mergers in *Maryland National* and those here.

> The parties have stipulated as to the corporate ancestry of the present defendant. [The original] company was incorporated in ... Pennsylvania. The Pennsylvania corporation [was] duly registered to do ... business in the State of Maryland. [Eventually,] the Pennsylvania corporation was merged into [a] Delaware corporation.... [T]he merged ... company ... terminated its previous registration ... to do business in the State

2. Iowa Code ch. 496A has been replaced by the Iowa Business Corporation Act. Iowa Code ch. 490 (1991). Provisions similar to § 496A.73

(1985) can now be found at Iowa Code § 490.-1106 (1991).

of Maryland. The surviving Delaware corporation ... then merged with ... a New York corporation ... [again] creating a Delaware corporation. The resulting company was merged into a [another] Delaware corporation. [Finally, the company] changed its name to ... the corporate entity now defendant in the present suit.

240 F.Supp. at 779. The court concluded: Under these facts, if the original Pennsylvania corporation ... were the defendant in this action; ... and if the mergers previously referred to had not taken place, there could be no question that the requirement of "minimum contacts" with the State of Maryland had been met. The present defendant has, however, urged that the fact that the defendant came into being through a series of mergers requires that the activities of its predecessor corporations in Maryland should be disregarded and that the contacts which the present defendant alone has had with the State of Maryland should be viewed in isolation from those of its predecessor corporations, thus, it is argued, requiring the conclusion that the statute in question as here applied is unconstitutional.... All that is necessary in the instant case to meet the due process question is that the contract, not the obligor under the contract, have a substantial connection with the State of Maryland.

*Id.* at 783–85 (emphasis added).

We see no reason why a similar conclusion should not be reached here. In *Chader*, we stated that "[t]he obligation of such a judgment defendant is a debt, and an action brought on a judgment is *ex contractu*, regardless of the original cause of action on which the judgment was recovered. A judgment, duly entered, has been described as a contract of record." 226 Iowa at 422, 284 N.W. at 186. There is no question that the judgment contract has direct and substantial connection with the State of Iowa.

Having recognized that personal jurisdiction can be asserted over a successor corporation based upon the conduct and actions of the constituent corporation, we see no reason why, on the present facts, it should not be established over a successor corporation resulting from a series of mergers. The successor corporation accepts the property and liabilities of each corporate party to the merger. The corporate ancestry is ascertainable prior to merger. Val-hi had direct contact with Iowa in resolving the amount of the indebtedness assumed by the successor corporations following mergers that occurred while the Liberty suit was pending before the Iowa district and appellate court.

As other courts have clearly stated: "Any other ruling would allow corporations to immunize themselves by formalistically changing their titles." *Duris*, 684 F.2d at 356. *See also Maryland Nat'l*, 240 F.Supp. at 780 ("Otherwise the entire intent ... could easily be subverted by merely having one ... corporation execute a contract and another foreign corporation outside of Maryland undertake (by merger) the performance of the contract in Maryland without thereafter being subject to suit in Maryland on a cause of action arising therefrom.").

### III. *Interest on the Judgment.*

In its ruling finding Val-hi liable for the former judgment against Liberty, the trial court ordered Val-hi to pay ten percent interest from the date the original suit was filed against Liberty, June 12, 1981. In its Iowa Rule of Civil Procedure 179(b) motion, Val-hi specifically asked the court to change the date on which the prejudgment interest began to accrue from June 12, 1981, to July 13, 1989, the date the suit was brought against it. The court denied this portion of Val-hi's motion.

The final order entered on June 16, 1986, in Hagan's suit against Liberty, provided that the judgment entered was "to bear interest according to law." Since 1981, Iowa Code section 535.3 has provided that "interest shall be allowed on all money due on judgments ... at the rate of ten percent per year.... The interest shall accrue from the date of the commencement of the action." Prejudgment interest, how-

ever, is only available on judgments for actual or compensatory damages. Interest on punitive or exemplary damages accrues only after the date the judgment is entered. *See Midwest Management Corp. v. Stephens,* 353 N.W.2d 76, 82 (Iowa 1984).

A successor corporation may be liable for a judgment entered against a constituent predecessor corporation. We think it logically follows the successor is liable for all legal obligations inhering in the original judgment, including prejudgment and postjudgment interest and costs.

Because the court in this action awarded interest on all of the original judgment from the date of filing, we remand with directions to the district court clerk. The clerk shall calculate interest in the following manner: Prejudgment interest should be calculated on the $32,000 compensatory damage award from June 12, 1981, until it is satisfied. Postjudgment interest on the $32,000 punitive damage award should be calculated from June 16, 1986, until it is satisfied. The $10,339.24 realized on November 21, 1986, at the time of the execution sale, should be set off against the interest and costs then due and owing. Interest shall continue to accrue until the judgment, interest and costs are completely satisfied. Entry of judgment in this manner allows Hagan full recovery upon the 1986 judgment, including interest and costs.

IV. *Limited Obligation of Successor Corporation.*

On appeal, Val-hi also argues, if personal jurisdiction exists, "recovery against a successor corporation under a judgment against a corporation is limited to the value of the assets transferred by the predecessor corporation to the successor corporation." This issue was not addressed by the trial court in its findings of fact, conclusion and order nor was it brought to the attention of the court in Val-hi's request for reconsideration.

Because this issue was not brought to the attention of the trial court, it has not been preserved for appellate review. *West Branch State Bank v. Gates,* 477 N.W.2d

848, 852 (Iowa 1991). We therefore decline to address it.

AFFIRMED AS MODIFIED; CASE REMANDED WITH DIRECTIONS.