Joseph DURIS, Plaintiff-Appellant,

v.

ERATO SHIPPING, INCORPORATED; Japan Line Limited; Regent Botan Shipping, Inc.; Pallas Shipping Agency, Ltd., Defendants-Appellees.

No. 81–3250.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1982.

Decided July 16, 1982.

Certiorari Granted Nov. 15, 1982. See 103 S.Ct. 371.

Thomas W. Gallagher, Frank W. Cubbon, Jr., Frank W. Cubbon, Jr. & Assoc., Toledo, Ohio, for plaintiff-appellant.

Douglas R. Denny, Ray, Robinson, Hanninen & Carle, Cleveland, Ohio, for defendants-appellees.

Before KENNEDY and MARTIN, Circuit Judges, and DUMBAULD, Senior District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Joseph Duris appeals the dismissal of his personal injury action. The District Court dismissed Duris' claim for failure to establish in personam jurisdiction over the defendant Pallas Shipping Agency, Inc.

Duris was injured in May, 1975 while working as a longshoreman on a vessel in the Port of Toledo, Ohio. He originally tried to sue Erato Shipping, the vessel's dry

* Honorable Edward Dumbauld, Senior District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

boat charter. Erato Shipping was subsequently merged into the present defendant, Pallas Shipping.

On appeal, Pallas argues that the District Court properly dismissed Duris' complaint because Pallas, as distinct from Erato, has never had sufficient business contacts in Ohio to bring it within the reach of that state's long arm jurisdictional statute.[1] In the alternative, Pallas contends that Duris' action is time barred by the limitations period of the federal workmen's compensation statute under which he received benefits. We find no merit in either argument and reverse. We will consider Pallas' second, more difficult argument, first.

■ Shortly after his injury, Duris began to receive benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* Under that statute and its regulations, injured employees receive compensation in one of two forms. If the employer controverts the claim, any benefits are paid pursuant to an award documented in a compensation order. 33 U.S.C. § 914; 20 C.F.R. §§ 702.251–.351 (1981). If, on the other hand, the claim is not contested, compensation is paid voluntarily without an award. 33 U.S.C. § 914, 20 C.F.R. §§ 702.231–242 (1981). It is undisputed that Duris' benefits were paid voluntarily; the Secretary of Labor entered no compensation order or award in this case.

According to section 33 of the Act, if benefits are paid under an award, any claim the employee might have against a third party will be assigned to the employer unless the employee brings his own action within six months of such an award:

(b) Acceptance of such compensation under an award in a compensation order filed by the deputy commissioner or Board shall operate as an assignment to the employer of all right of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such award.

33 U.S.C. § 933(b).

This subsection does not appear to cover Duris' claim. The Act, as noted earlier, makes purposeful use of the term "award." Thus, if benefits are paid without an award, there should be no assignment and no six-month limitation period. Nevertheless, at least one court has held that the mere receipt of compensation benefits constitutes an "award" and so triggers section 33. *Larson v. Associated Container Transport (Australia).* 459 F.Supp. 561 (E.D.Va.1978). Similarly, the Fourth Circuit has held that the routine filing of the documents which must accompany even benefits paid without an award are sufficient ratification and acceptance to constitute a formal award. *Liberty Mutual Insurance Co. v. Ameta & Co.,* 564 F.2d 1097 (4th Cir. 1977). On the basis of this authority, Pallas argues that Duris' acceptance of compensation in May, 1975 triggered section 33 and its short statute of limitations, which expired prior to the 1977 commencement of this action. With all respect, we decline to follow *Liberty Mutual* and *Larson.*

Those cases' rationale for ignoring the narrow assignment embodied in section 33 is that unless the assignment provision is read broadly to include every longshoreman's claim, the many claims paid without an award will never be assigned to the employer. This result, the argument continues, is inequitable because without the assignment, the employer, or its subrogee insurance carrier, can not seek reimbursement from any negligent third party. Thus, to protect itself, the employer would needlessly controvert every claim in order to gain a formal award and hence the opportunity for an assignment. Unless remedied by a broad interpretation of section 33, these non-disputes will increase costs while slowing payments to injured employees. *See Liberty Mutual, supra,* at 1103.

This fear is unfounded. Employers are not dependent upon the employee's claim for reimbursement purposes. In *Federal*

1. Ohio Revised Code § 2307.382.

*Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), the Supreme Court held that the employer's remedy under section 33 is not exclusive. Instead, in the typical situation where a stevedoring contractor, the employer, seeks reimbursement from a negligent shipowner, federal maritime law would permit a tort action in the employer's own right for breach of the shipowner's duty of due care:

> We must also reject the implication of the Court of Appeals' opinion that under federal maritime law the shipowner owed the stevedoring contractor no duties whose breach would give rise to a direct action for damages.
>
> As we held in *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632, 3 L.Ed.2d 550, 555, 79 S.Ct. 406, "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." That duty of due care imposed by law extends to the stevedoring company as well as to others lawfully on the ship, and its breach gives rise to a cause of action for any damages proximately caused. It is not disputed, for example, that if the shipowner's negligence caused damages to the stevedoring contractor's equipment, those damages would be recoverable in a direct action sounding in tort. We can see no reason why the shipowner's liability does not in like fashion extend to the foreseeable obligations of the stevedoring contractor for compensation payments to the representative of a longshoreman whose death was occasioned by the shipowner's breach of his duty to the stevedoring contractor.

*Id.* at 414–415, 89 S.Ct. at 1149–50. *See also Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

Furthermore, we believe that a broad interpretation of section 33 would vitiate the policy behind its narrowly precise language. Congress might well have sought to assign away an employee's claim only in those cases where the injured longshoreman is likely to be cognizant of the statutory assignment. Although not strictly an election of remedies, the loss of one's personal injury action through an assignment is not without potentially substantial consequences. Once the assignment has been effected, the employee loses all control over the action. Should the employer decide not to sue, the claim will expire. *Rodriguez v. Compass Shipping Co., Ltd.*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981). Unwilling employees should not suffer this consequence. Indeed, the "award" language was added to the statute in 1938 to prevent exactly that occurrence.[2] H.R.Rep. No.1945, 75th Cong., 3d Sess. 9; *Rodriguez, supra*, at 605, 101 S.Ct. at 1951. Prior to 1938, assignment occurred immediately upon the acceptance of compensation. Appellee's position would return the Act to its

---

**2.** The United States Employment Compensation Commission was the moving force behind this amendment. Lewis Dalby, chief counsel for the Commission, made the following comments at the July 31, 1935 House of Representatives Subcommittee hearing on H.R. 8293:

> The only remaining section, section 10, relates to the provision of section 33, which provides that the acceptance of compensation by an injured employee shall work an assignment of his right against a third party who has caused his injury. Undoubtedly, very often employees accept compensation without realizing that effect upon their rights. So that the purpose of this is to make the assignment of the right of action arise only when compensation is accepted on an award made by the deputy commissioner. In other words, when the injury occurs, the mere fact that the employer or insurance carrier hurries up and sends a payment around, which is accepted, without knowing that that would take away the entire right, which may be very valuable, that assignment would not arise in such a case, but only if the case had gone to the deputy commissioner and had been formally heard and an award issued, so that there would be opportunity for the injured man, or those acting for him or as beneficiaries, to find out the effect of such an acceptance of compensation before taking it.

Proposed Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Hearings on H.R. 8293 before the Subcomm. on the Judiciary, 74th Cong., 1st Sess. (1935).

pre-1938 form with the single added protection of a six-month period in which the employee, who has done no more than passively accept benefits, may or may not learn of the impending loss of his claim.

In contrast, where a claim has been paid pursuant to an award, the employee, by virtue of the claim's contravention, is likely to have been brought into sufficient contact with the statute so as to ensure some cognizance of the assignment provision. Thereafter, the employee can make an informed decision. If his employer, or its insurance carrier, appears willing to maintain the action, he may allow the right to pass, knowing that the employer is entitled to recover fully on his claim. This, perhaps, is the favored result in light of the employer's greater ability to maintain a legal action. Alternatively, the employee will realize that he must act rather quickly or risk losing the right to control the action altogether.

In rebuttal, appellees argue that an informed decision on the employee's part is not critical because in any instance where the injury can be traced to a negligent third party, the employer's interest in recovering the compensation paid will simultaneously protect the rights of the employee. Furthermore, the Act provides an additional incentive by allowing the employer to keep twenty percent of any recovery over the costs of litigation and all compensation due. 33 U.S.C. § 933(d). Given these inducements and the greater resources of the employer, a broad interpretation of section 33 will benefit both the employer and the employee.

This analysis loses its appeal, however, if we consider the very real threat of conflicting interests between employer and employee.

As noted earlier, the most likely third party tort-feasor will be the vessel's owner or charterer, the owner or lessee of the longshoreman's workplace. On the other hand, the employer-assignee is by definition a stevedoring contractor whose clients are those very same shipowners or charterers. The juxtaposing of this stevedore-client relationship between the employee and the tort-feasor presents obvious disincentives to the bringing of the employee's action by the employer. If the employer-assignee depends to any significant degree upon the shipowner or charterer for future business, the probability that it will enforce the rights of its injured employee against the third party-client is reduced. Nor will the likely imposition of the employer's carrier-subrogee between it and the third party-client alleviate the conflict. The insurance company can hardly ignore the business relationships of its own clients. This conflict of interest problem makes us hesitate to countenance any interpretation of the Act which would expand the assignment provisions of section 33. If in fact the employer is unlikely to vindicate the rights of the employee, an assignment becomes increasingly similar to the harsher legal doctrine of election of remedies. Such a substantive reinterpretation of the statute lies far beyond the power of this court.

We will not, therefore, read section 33 to encompass all claims paid under the Act. Where, as here, the injured employee has merely accepted compensation payments, no assignment occurs and the third party claim does not expire in six months. The Second Circuit gave due consideration to the policy against unwitting assignments and reached a similar conclusion. *Rodriguez v. Compass Shipping Co., Ltd.*, 617 F.2d 955 (1980), *aff'd on other grounds*, 451 U.S. 596, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981).

Our holding today is that the mere receipt of compensation benefits under the Act does not trigger the assignment provision of section 33(b). Hence Duris' claim is not time barred. *See generally Dunbar v. Retla Steamship Co.*, 484 F.Supp. 1308 (E.D. Penn.1980).

■ The second question is quickly resolved. In its order, the court below concluded that service of process against Pallas Shipping was improper because that company had never done any business in Ohio. Requiring Pallas to submit to suit in Ohio would, in the court's opinion, offend the constitutional notions of fair play set out in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

This ruling was erroneous. Although Pallas Shipping has never had any business contacts in Ohio, its constituent corporation, Erato Shipping, clearly has. No one disputes that Erato was the bareboat charterer of the vessel upon which Duris was injured and that Erato subsequently merged with Pallas. In this diversity action we are bound to apply Ohio law. *Poyner v. Erma Werke Gmbh*, 618 F.2d 1186, 1187 (6th Cir.), *cert. denied sub nom. Insurance Co. of North America v. Poyner*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). That law clearly states that after a merger, the surviving corporation is liable for all claims against the constituent corporation:

> When a merger of consolidation becomes effective:

> The surviving or new corporation is liable for all obligations of each constituent corporation, including liabilities of defending share holders. Any claim existing or action or proceeding pending, by or against any constituent corporation, may be prosecuted to judgment, with right of Appeal, if such merger or consolidation had not taken place, or the surviving or new corporation may be substituted in its place.

Ohio Revised Code § 1701.82(A).

Thus, pursuant to this statute, if Duris can establish Ohio contacts sufficient to gain jurisdiction over Erato Shipping, he may thereby gain jurisdiction over Pallas Shipping. Any other ruling would allow corporations to immunize themselves by formalistically changing their titles.

The judgment is reversed and remanded for proceedings consistent with this opinion.