In re SILICONE GEL BREAST IMPLANTS PRODUCTS LIABILITY LITIGATION (MDL–926).

No. CV 92–P–10000–S.

United States District Court, N.D. Alabama, S.D.

Nov. 29, 1993.

**OPINION and ORDER**

*(JURISDICTION OVER BAXTER INTERNATIONAL)*

POINTER, Chief Judge.

Under submission, after appropriate discovery, extensive briefing, and oral argument, is the motion by Baxter International Inc. ("BII")[1] to be dismissed from thousands of cases in this MDL proceeding for lack of personal jurisdiction. BII, a publicly-owned holding company incorporated in Delaware, asserts that—unlike its wholly-owned subsidiary Baxter Healthcare Corporation ("Baxter

---

1. At the time of the November 1985 merger, the name of BII was Baxter Travenol Laboratories Incorporated; at earlier times, its name had been Don Baxter Intravenous Products Corporation and later Baxter Laboratories Incorporated.

After the merger the name was changed to Baxter International Inc., and for simplicity, the corporation will be identified throughout this opinion as BII.

Healthcare"), also a defendant in these cases—it is subject to personal jurisdiction in only a few states.[2] The court concludes that BII is subject to suit throughout the United States as a consequence of its November 1985 merger with American Hospital Supply Corporation ("AHSC"), and accordingly denies BII's motion.[3]

The critical facts are undisputed. For a number of years before 1984, AHSC, an Illinois corporation—or one of its subsidiaries[4]—had been engaged in the manufacture and distribution of mammary prostheses. In March 1984, AHSC sold most of the assets constituting its breast implant line of business to a third-party, Mentor Corporation, and thereupon ceased further manufacture or distribution of mammary prostheses. Under the contract, Mentor agreed to be responsible for liabilities that might arise in connection with the distribution of mammary prostheses that had not yet become finished products, while AHSC agreed to be responsible for product liability claims that had arisen or might arise as a result of earlier prostheses.

Twenty months later, on November 25, 1985, BII and AHSC effected a corporate merger under Delaware law. BII was the surviving corporation, and the former shareholders of AHSC received various combinations of BII common and preferred stock. BII does not deny that, immediately before the merger, AHSC was, as a result of extensive business activities, subject to suit throughout the United States. It denies, however, that the merger rendered it similarly subject to the jurisdiction of those courts. BII's position is based on the fact that, as a planned and integral part of the transaction with AHSC, all of the breast implant liabilities[5] that accompanied AHSC into the surviving corporation were, immediately upon consummation of the merger, assumed by a BII subsidiary, a company which ultimately became part of Baxter Healthcare.[6]

According to BII, its operating subsidiary Baxter Healthcare—and not itself, a mere holding company—is the corporation that

---

2. BII concedes that it is subject to jurisdiction in Delaware, Illinois, Kansas, Mississippi, and the District of Columbia and does not contest jurisdiction in cases initially filed in federal or state court in those states. Presumably, however, if successful on its current motion to dismiss, BII would pursue, in cases filed in those jurisdictions, a motion for summary judgment denying liability for the debts of American Hospital Supply Corporation.

3. The court pretermits discussion of alternative grounds plaintiffs advance to support jurisdiction over BII, attempting to attribute to BII the activities of Baxter Healthcare under theories of alter ego or agency.

4. In 1974 AHSC had acquired Heyer–Schulte Corporation, a California corporation engaged in manufacture and sale of various medical prostheses, including breast implants. For the next eight years this business was continued through an AHSC Delaware subsidiary, known first as Heyer–Schulte (Delaware) and later as American Heyer–Schulte Corporation. In late 1982 the business began to be operated, apparently as a result of a dissolution of the subsidiary, simply as a division of AHSC, and it was being so operated at the time of the sale to Mentor. Some confusion exists concerning the details of the 1974 acquisition, the formation of the Delaware subsidiary, and the 1982 dissolution, but this is of no consequence to the pending motion in view of the acknowledged amenability of AHSC in 1984 to federal jurisdiction throughout the United States.

5. The agreement also transferred to the subsidiary most, if not all, of the assets associated with the breast implant product line that remained after the 1984 sale to Mentor. Plaintiffs correctly note that the agreement did not explicitly call for assumption by the subsidiary of the breast implant liabilities, the wording being that the subsidiary "assumes and agrees to perform all obligations and liabilities associated with [assets being transferred]." In this litigation, both BII and Baxter Healthcare have asserted that the agreement was intended to, and did, effect an assumption by Baxter Healthcare of breast implant liabilities, and the Court will accept—and enforce as between those parties—that interpretation.

6. The initial transfer by BII of most of AHSC's assets and liabilities was to an Illinois subsidiary, Baxter Acquisition Sub., Inc., and the name of the subsidiary was contemporaneously changed to American Hospital Supply Corporation (a name that had become available because of the cessation of the separate corporate existence of AHSC as a result of the merger). A year later this subsidiary was merged with another BII subsidiary, Travenol Laboratories, Inc. The name of this company was later changed to Baxter Healthcare Corporation. For simplicity, the company will be identified throughout this opinion as Baxter Healthcare.

should be held responsible for any breast implant liability claims against AHSC and subject to suit where AHSC could have been sued. (1) BII does not challenge the general principle that the corporation surviving after a merger is subject to all responsibilities of each of the merging corporations. (2) Nor does it challenge the general principle that the assumption of one party's liabilities by another, while potentially effective as between those parties, does not relieve the former of its responsibility to the third-party claimants. (3) BII's thesis, based on analogies found in certain tax cases, is that a merger followed by an immediate assignment and assumption of liabilities should be viewed as a whole transaction, independent of its separate steps, and that accordingly third-party claimants should be permitted to look only to the company ultimately agreeing to be responsible for those liabilities.

## I.

The general principles governing statutory mergers are discussed in 15 FLETCHER CYC. CORP., chapter 44 (Perm. ed.). As stated in § 7082:

> When corporations merge, the surviving corporation succeeds to both the rights and obligations of the constituent corporations.... Once a corporate merger has been completed, the absorbed corporation immediately ceases to exist as a separate entity, and may no longer be named a party in litigation. As a general proposition, actions and conduct of a constituent corporation may be attributed to the surviving corporation for purposes of determining the surviving corporation's amenability to personal jurisdiction for liabilities incurred by the constituent corporation.

Paragraph 1.2 of the merger agreement between BII and AHSC contains a specific recognition of these principles:

> *Effect of Merger.* The Surviving Corporation [BII] shall succeed to all of the rights, privileges, powers and franchises, as well of a public as of a private nature, of the Constituent Corporations [BII and AHSC], all of the properties and assets of the Constituent Corporations and all of the debts, choses in action and other interests due or belonging to Constituent Corporations and shall be subject to, and responsible for, all of the debts, liabilities and duties of the Constituent Corporations with the effect set forth under applicable law.

The laws of Delaware, under which this merger was consummated, are consistent with these general principles and validate, if not require, the terms of the merger agreement. According to 8 Del.C. § 259(a):

> When any merger ... shall have become effective ... the constituent corporations shall become a new corporation, ... being subject to all the restrictions, disabilities and duties of each of such corporations so merged ... and ... all rights of creditors ... of any of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said surviving or resulting corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

As noted, BII does not challenge the proposition that, had AHSC's breast implant assets and liabilities never been assigned to BII's subsidiary, it would, as a result of the merger, have been responsible for these liabilities and subject to suit wherever AHSC could have been sued.

Perhaps because this principle is so fundamental to the law of corporate mergers, few reported decisions address the issue of personal jurisdiction over a surviving corporation following a merger. Most directly on point is *Goffe v. Blake,* 605 F.Supp. 1151 (D.Del.1985). In deciding where it could transfer a case under 28 U.S.C. §§ 1404 and 1406, the court held that, following a merger under Delaware law, the surviving corporation was subject to suit in any jurisdiction where one of the merging corporations could have been sued. It distinguished an older Delaware state court decision containing arguably contrary dicta,[7] and noted that its

---

7. In *Cole v. Nat'l Cash Credit Ass'n,* 18 Del.Ch. 47, 156 A. 183 (1931), the court, in ruling on a

interpretation of § 259(a) of the Delaware Corporation Law was not inconsistent with § 252(d) of that Law.[8]

*Goffe* cited two district court decisions[9] and *Duris v. Erato Shipping, Inc.*, 684 F.2d 352 (6th Cir.1982). In *Duris*, the Sixth Circuit had reversed a dismissal for lack of jurisdiction in a case involving Ohio law and held that the contacts with the state by one corporation sufficed to establish jurisdiction over a corporation into which it subsequently merged. In reviewing, and affirming, *Duris* on another issue in the case, the Supreme Court did not question this jurisdictional ruling. *Pallas Shipping Agency Ltd. v. Duris*, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983).

█ This court has not found any case involving an actual merger of corporations (as distinguished from a transfer of assets, assumption of liabilities, or guarantee) in which the surviving corporation was permitted to escape jurisdiction in a state where one of the merging corporations had been subject to suit. Therefore, as a result of its merger with AHSC, BII became subject to suit wherever AHSC could have been sued unless some different result flows from the assumption of liabilities by its subsidiary.

## II.

It is beyond dispute that one company's transfer of assets to another under circumstances resulting in the transferee's becoming responsible for tort liabilities to third-parties—as upon an express agreement to assume such liabilities—does not, as to the third-parties, relieve the transferor of those same responsibilities. As stated in 15 FLETCHER CYC. CORP. § 7123 (Perm. ed.):

> Although the sale of assets may allow an injured plaintiff to proceed against the successor corporation it does not vitiate the original company's liability. The right of the injured party to elect to proceed against the defunct corporation, the successor corporation, or both cannot be altered per se by the corporations, although the corporations can regulate how much liability will be allocated among themselves.

*See, e.g., Grant–Howard Associates v. General Housewares Corp.*, 63 N.Y.2d 291, 482 N.Y.S.2d 225, 472 N.E.2d 1 (1984); *Haynes v. Kleinewefers & Lembo Corp.*, 921 F.2d 453 (2nd Cir.1990).

BII does not challenge the proposition that, if properly treated as having become responsible for AHSC's liabilities, it could not have escaped those liabilities by having them assumed by its subsidiary. As it acknowledged in footnote 6 of its reply brief (p. 14), "BII's point is not that plaintiffs cannot sue [AHSC] as well as [Baxter Healthcare]; it is, instead, that BII, which did not hold the contractual liability for silicone breast implants, is not a proper party in these product liability actions."

## III.

BII contends that, given the integrated nature of the merger and the immediate assignment and assumption, one should, as in tax cases, disregard the form and consequences of the intermediate steps and, look-

---

request to enjoin a proposed merger of a New Jersey corporation into a Delaware corporation, considered the contention of the plaintiff, a creditor of the New Jersey corporation, that he might be unable after the merger to institute a law suit in New Jersey. The Chancellor did not, however, find that contention, if correct, sufficient to support the request for injunctive relief and, moreover, expressed the view: "I very much doubt that the act of merging would deprive the complainant of its right to a remedy in New Jersey.... [The language of the predecessor of § 259(a)] is broad enough to raise a strong argument in favor of the view that the continuing liability of the constituent debtor to be sued in New Jersey by reason of past transactions in that State becomes the liability of the company into which it becomes merged or with which it is consolidated." 156 A., at p. 186.

8. Section 252(d) assures that claimants against a Delaware corporation will not be deprived of their right to sue in Delaware if it is later merged into a corporation in another state. As noted by Judge Stapleton in *Goffe*, this hardly supports an argument that after a merger involving a Delaware corporation suit may be brought only in Delaware.

9. *Cole v. Caterpillar Machinery Corp.*, 562 F.Supp. 179 (M.D.La.1983); *Maryland Nat'l Bank v. Shaffer Stores Co.*, 240 F.Supp. 777 (D.Md.1965).

ing to the net substantive effect, treat the transaction as if AHSC had merged into Baxter Healthcare rather than into BII.

The court rejects this attempt to define corporate responsibilities to third-persons by borrowing concepts developed under the Internal Revenue Code. Even if otherwise persuasive, however, this argument would fail on the particular facts of the present motion for an independent reason; namely, because not all of AHSC's assets and liabilities were transferred to Baxter Healthcare. Under the assignment and assumption agreement, some of AHSC's assets were transferred to two other subsidiaries of BII, while still other of AHSC's assets and liabilities [10] were retained by BII. The court need not address whether the particular assets and liabilities assigned to various subsidiaries or retained by the parent actually resulted in an underfunding of those liabilities assumed by Baxter Healthcare. The point, rather, is that acceptance of BII's argument would permit a company surviving a merger to impair, if not destroy, the rights of creditors of the merging corporations by the simple device of contemporaneously assigning particular assets and liabilities to subsidiaries. Such a result would clearly contravene statutory mandates, such as found in 8 Del.C. § 259(a), that "all rights of creditors ... shall be preserved unimpaired, and all debts, liabilities and duties shall thenceforth attach to said surviving ... corporation, and may be enforced against it to the same extent as if said debts, liabilities, and duties had been incurred or contracted by it."

■ BII correctly asserts that, when measuring the tax consequences upon corporations and stockholders affected by inter-corporate transfers and reorganizations, courts have often considered the substance of transactions to be more significant than their form, utilizing on occasion what has been described as a "step-transaction" analysis. The principal case cited by BII for this prop-

osition is *Commissioner v. Clark*, 489 U.S. 726, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989). *Clark* involved a "triangular merger," in which Basin Surveys, Inc. merged into a subsidiary of N.L. Industries in exchange for both stock in N.L. Industries and cash. The controversy involved whether Basin's sole stockholder should be taxed on the cash (or "boot") at capital gain rates or, in part, at the higher rates for ordinary income. The key to that determination depended on various sections of the Internal Revenue Code which recognize various forms of corporate reorganizations, and particularly whether the exchange had "the effect" of a dividend. It was in this context that the Supreme Court discussed the need to consider each of the steps, not in isolation, but as interrelated, in order to determine the economic significance of the entire transaction.[11]

Nothing in *Clark* suggests that, even in cases involving tax statutes, the Supreme Court was holding that the legal consequence of steps taken during a corporate merger and reorganization should be disregarded. Indeed, the Court would not have been confronted with the issue before it but for the acknowledgement by the parties that the three-party arrangement conformed to the requirements of law of both a statutory merger under I.R.C. § 368(a)(1)(A) and a special form of reorganization recognized under I.R.C. § 368(a)(2)(D).

If anything, the facts involved in the *Clark* case provide insight into how—if BII was to be insulated from the liabilities of AHSC—that could have been achieved. The 1985 merger could presumably have been structured, like that in *Clark*, so that AHSC was merged into BII's subsidiary rather than into BII itself, but with BII stock being distributed as consideration for the AHSC stock. If that had been done, this court would not now be making the ruling contained in this opinion. No doubt there were reasons for not selecting that type of merger—perhaps be-

---

10. BII retained various bank accounts, marketable securities, capital stock, and goodwill owned by AHSC, as well as responsibility for commercial paper, deferred credits, various notes payable, and long-term debt.

11. Most of the opinion—discussing whether, from that perspective, the cash payment was more nearly like a redemption of Basin stock immediately before the merger or a redemption of N.L. Industries stock immediately after the merger—is wholly irrelevant to BII's argument in the present case.

cause of the desire to transfer some AHSC assets to other BII subsidiaries or to keep some of AHSC's assets and liabilities in BII.[12]  In any event, BII should not now be heard to complain about the legal consequences resulting from a series of transactions it agreed to, if not dictated.

In a supplemental brief, BII has cited some cases[13] in which courts have looked beyond the formalities of the devices used to effect a corporate reorganization in deciding whether, in fairness to creditors, to *impose* liability on a "successor" corporation following a transfer of assets where there was no merger.  These cases might be appropriate if the issue were whether to impose some liability on Baxter Healthcare that it had not agreed to assume.

No case, however, has been cited or independently located by the court that supports BII's contention that, by immediately transferring assets or liabilities, a surviving corporation can escape from its legal responsibilities resulting from a statutory merger.  Contrary to BII's argument, *La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596 (D.Del. 1971), does not provide such support.  There is a factual similarity, for in *Lacoste* there had been a statutory merger of "Crystal II" into General Mills with a simultaneous transfer of Crystal II's assets and liabilities to General Mills' wholly-owned subsidiary "Crystal III."[14]  At this point, however, any similarities end.  Although the court dismissed General Mills from the law suit, the reason for dismissal was not that General Mills had no responsibility for the obligations of Crystal II.  Rather, the ruling was based on the fact that neither General Mills nor Crystal III—which had been added as additional parties in plaintiff's reply to a counterclaim by the original defendant, "Alligator," also a General Mills subsidiary—was a proper party to the dispute between plaintiff and Alligator.  There is nothing in *Lacoste* to

suggest that, had some claim against Crystal II been appropriate for inclusion in the litigation, General Mills or Crystal III would have been dismissed.

### IV.

For the reasons stated, the motion of Baxter International Inc. to dismiss is hereby DENIED.  This ruling applies in all cases in this court, now pending or subsequently filed or transferred, to which the motion applies.[15]

---

**12.**  See note 10, *supra.*

**13.**  *E.g., Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir.1974); *Knapp v. North American Rockwell Corp.*, 506 F.2d 361 (3rd Cir.1974).

**14.**  Unlike the present case, apparently all of Crystal II's assets and liabilities were transferred to the subsidiary following the merger.

**15.**  This judge rarely has opinions published. This opinion will, however, be published because of the paucity of decisions involving the issue addressed and because of its possible utility in breast implant cases in state courts.