KUHN, J.
|2Plaintiff, Cynthia Bridges, in her capacity as Secretary of the Department of Revenue for the State of Louisiana (“the Department”), appeals the trial court’s October 22, 2007 judgment, which sustained defendant Mosaic Global Holdings, Inc.’s (“Mosaic”) peremptory exception raising the objection of prescription and dismissed plaintiffs suit to collect corporate income taxes. Mosaic filed an answer to the Department’s appeal, asserting that the trial court’s May 26, 2006 judgment, which overruled its declinatory exceptions raising the objections of lack of personal jurisdiction and improper venue, should be reversed.
We find the Department’s suit is not prescribed and reverse the trial court’s October 22, 2007 judgment. Further, because we find the trial court had personal jurisdiction over Mosaic pursuant to the long-arm statute, La. R.S. 13:3201, and East Baton Rouge Parish is a proper venue for this suit, we affirm the trial court’s May 26, 2006 judgment.[1] Accordingly, we remand for further proceedings.
I. PROCEDURAL AND FACTUAL BACKGROUND
Freeport-McMoran Inc. (“Freeport”), a Delaware corporation, engaged in business in Louisiana in 1997. During that year, Freeport was acquired by and merged into IMC Global Inc. (“IMC”), a Delaware corporation not qualified to transact business in Louisiana. In 2004, IMC changed its name to Mosaic, a | (¡corporation also not qualified to transact business in Louisiana. The parties do not dispute that Mosaic was formerly known as IMC and that Mosaic is by merger the successor-in-interest to Freeport as of December 22,1997.
On January 3, 2006, the Department filed suit against Mosaic in East Baton Rouge Parish, seeking to recover corporate income taxes allegedly due by Free-port for the tax period ending December 22, 1997. The Department alleged it had conducted an audit of Mosaic’s books and records and those of its parents, affiliates and/or subsidiaries for that tax period.[2] *309 The Department alleged that Mosaic transacted business in Louisiana and earned income attributable to Louisiana and has, thereby, subjected itself to pay Louisiana’s corporate income tax in accordance with La. R.S. 47:287.2, et seq. The Department asserted that despite amicable demand, Mosaic has refused to pay the amounts due.
Mosaic responded by filing declinatory exceptions that raised the objections of lack of personal jurisdiction and improper venue.[3] Following an evidentiary hearing, the trial court overruled those exceptions by a judgment dated May 26, 2006.[4]
^Thereafter, Mosaic filed a peremptory exception urging the objection of prescription. During the hearing regarding this exception, Mosaic introduced into evidence: 1) Freeport’s Louisiana Corporation Income Tax Return for the fiscal year beginning on January 1, 1997 and ending on December 22, 1997, which was dated November 17,1998; 2) four “Agreement[s] to Suspend Prescription of Louisiana Corporation Income Tax,” each signed by a representative of IMC or Mosaic and a Department representative; and 8) a September 27, 2001 letter from a Department representative referring to the “Agreement to Suspend Prescription” for Free-port’s Louisiana income tax and franchise tax as “waivers of prescription.”
The trial court sustained Mosaic’s exception and signed an October 22, 2007 judgment in favor of Mosaic and against the Department, ordering the dismissal of the Department’s action with prejudice. The Department has appealed, asserting the trial court erred in finding that the “Agreement^] to Suspend Prescription” did not suspend prescription until April 6, 2006. Mosaic has also answered the appeal, challenging the trial court’s denial of its exceptions.[5]
II. ANALYSIS
A. Prescription
If evidence is introduced at the hearing on the peremptory exception of prescription, the trial court’s findings of fact are reviewed under the manifest error-Jdearly5 wrong standard of review. Carter v. Haygood, 04-0646, p. 9 (La.1/19/05), 892 So.2d 1261, 1267. The trial court’s legal conclusions, however, are reviewed by the appellate court de novo. Boquet ex rel. Billiot v. SWDI, LLC, 07-0738, p. 2 (La.App. 1st Cir.6/6/08), 992 So.2d 1059. In reviewing a peremptory exception raising the objection of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim that is said to be extinguished. Id.
*310 Freeport, a Delaware corporation that engaged in business in Louisiana in 1997, merged into IMC, a Delaware corporation not qualified to transact business in Louisiana.[6] In 2004, IMC changed its name to Mosaic, a corporation also not qualified to transact business in Louisiana. The petition asserts that the corporate income tax is owed as a result of business conducted during 1997, presumably by Freeport prior to its merger into IMC.
The tax return for the 1997 fiscal year at issue was due on April 15, 1998. Freeport filed its return on November 17, 1998, presumably after filing for and being granted an extension. See La. R.S. 47:103.[7] Payment of any taxes owed for | fithat tax period were also due during 1998. See La. R.S. 47:105(A).[8] A claim to collect taxes “shall prescribe in three years after the thirty-first day of December in the year in which they are due, but prescription may be interrupted or suspended as provided by law.” La. Const. Art. VII, § 16.
Louisiana Revised Statutes 47:1580 provides the following regarding suspension of prescription:
A. The prescription running against any state tax, license, excise, interest, penalty, or other charge shall be suspended by any of the following:
(1) The secretary’s action in assessing any such amounts in the manner provided by law.
(3) The filing of any pleading, either by the secretary or by a taxpayer, with the board of tax appeals or any state or federal court.
B. The running of such prescription shall also be suspended prior to the lapse of the prescriptive period set out in the Constitution of Louisiana as hereinafter provided:
(1) For any period by means of a written agreement between the taxpayer and the secretary of the Department of Revenue[.]
Louisiana Civil Code article 3472 also provides, “The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.”
|7In the present case, no evidence was introduced to establish that the secretary had made any assessments pertinent to this matter. In September 2001, however, Freeport and the Department executed a standardized form entitled “Agreement to
*311 Suspend Prescription,” which provided in pertinent part as follows:[9]
WHEREAS, both the taxpayer and the [Department] desire to have additional time within which to discuss the legal questions and facts involved, it is hereby agreed that the [Department] shall not finally assess nor bring suit for collection of such taxes prior to FEBRUARY 01, 2002, and the taxpayer agrees that the running of the period of prescription against the assessment or collection of any such tax due and owing to or refund from the State of Louisiana for the years covered by this agreement is hereby suspended for a period of ONE YEAR from December 31, 2001, and that any such tax may be assessed or suit instituted for the collection or refund from thereof at any time between the dates of FEBRUARY 01, 2002 through DECEMBER 31, 2002, and that the taxpayer will never plead prescription to any claim for taxes which are the subject of the agreement for the period stated above if such taxes are assessed or suit brought for the collection thereof before the expiration of the time set out herein.
In August 2002, IMC and the Department executed another “Agreement to Suspend Prescription” that likewise provided that “the running of the period of prescription” was “suspended for a period of ONE YEAR from December 31, 2002.” IMC and the Department executed another agreement in October 2003, which provided that “the running of the period of prescription” was “suspended for a period of one year from December 31, 2003.”
| sIn November 2004, Mosaic and the Department signed the last of the “Agreements to Suspend Prescription,” which provided in pertinent part as follows:
Whereas, the [Department] desires to verify the amount of Louisiana Corporation Income Tax owed by or refund owed to MOSAIC GLOBAL HOLDINGS INC. (F/K/A IMC GLOBAL INC.) SUCCESSOR BY MERGER TO FREEPORT-MCMORAN INC., the taxpayer, for the period of January 1, 1997 through December 22, 1997; and
Whereas, both the taxpayer and [the Department] desire to have additional time within which to discuss the legal questions and facts involved, it is hereby agreed that the Secretary of Revenue shall not finally assess nor bring suit for collection of such taxes prior to February 1, 2005, and the taxpayer agrees that the running of the period of prescription against the assessment or collection of any such tax due to the State of Louisiana for the period covered by this agreement is hereby suspended for a period of one year from December 31, 2004, and that any such tax may be assessed or suit instituted for the collection thereof at any time between the dates of February 1, 2005 through December 31, 2005, and that the taxpayer will never plead prescription to any claim for taxes which are the subject of this agreement for the period stated above, if such taxes are assessed or suit brought for the collection thereof before the expiration of the time set out herein. The [Department] agrees that the period of prescription for refunding or crediting overpayments that may be due to the taxpayer shall be extended in accordance with the terms of this agreement.
*312 Based on these “Agreement[s] to Suspend Prescription” and the time of the filing of the petition, the trial court determined that the Department’s suit had prescribed. The trial court reasoned that if the Department was “going to file suit, [it] should have done so by the date set forth in the contract.”
In the instant suit, the facts are not in dispute; the issue presented herein is a legal one, i.e., did the four “Agreements] to Suspend Prescription” effect a | (¡suspension of the three-year prescriptive period set out in La. Const. Art. VII, § 16, or did the “Agreements] to Suspend Prescription” effect a waiver of the Department’s right to file suit to collect such taxes after December 31, 2005?
Prescription is suspended for as long as the cause of suspension continues. See La. C.C. art. 3472. After the cause for the suspension ends, the prescriptive time begins running and the “time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the period of the suspension is deducted.” LeBreton v. Rabito, 97-2221, p. 6 (La.7/8/98), 714 So.2d 1226, 1229 (quoting G. Baudier-Lacantinerie & A. Tissier, TRAITE THEORIQUE ET PRA-TIQUE DE DROIT CIVIL, No. 415 at 221-22 (4th ed.1924), reprinted in 5 CIVIL LAW TRANSLATIONS at 21-22 (La. St. Law Inst. Trans. 1972)).[10]
The Department argues that prescription was halted or slumbered on September 26, 2001, when both it and Mosaic had signed the initial “Agreement to Suspend Prescription.” In brief, the Department contends:
The suspending, halting or slumbering of the liberative prescriptive period as provided under [La. Const. Art. VII, § 16] continued with each subsequent execution of the suspension of prescription agreements in 2002, 2003 and 200[4].... Under the suspension agreement, prescription slumbered or halted from September 26, 2001, when the first agreement was signed through December 31, 2005, when the suspension agreement no longer existed.
1inThus, the Department asserts that when the period of suspension ended on December 31, 2005, it had 96 days remaining in the three-year prescriptive period (or until April 6, 2006) within which to file suit, and its filing on January 3, 2006, was timely.
Mosaic argues that “the contract is not one which ‘suspends’ the running of prescription,” but that the contracts are more accurately categorized as “agreements by the taxpayer to waive the plea of prescription .... ” Mosaic asserts the agreements effected a “waiver of the prescription defense by the taxpayer up to, but no later than, December 31 of the applicable year.” To bolster its “waiver” argument, Mosaic introduced a September 27, 2001 cover letter, signed by Lambrini C. Piskioulis, Administrative Secretary for the Department, which was addressed to Freeport, wherein she referenced enclosed “executed waivers of prescription agreement ... extending the statute of limitations ...” that pertained to Freeport’s 1997 Louisiana income tax liability.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the *313 words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. The words of a contract must be given their generally prevailing meaning. La. C.C. art.2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. The use of extrinsic evidence is proper only when a contract is found to be ambiguous after an ^examination of the four corners of the agreement. James Const. Group, L.L.C. v. State ex rel. Dep’t of Tramp, and Dev., 07-0225, p. 5 (La.App. 1st Cir.11/2/07), 977 So.2d 989, 993. When addressing such legal issues, a reviewing court conducts a de novo review of questions of law and renders a judgment on the record. Id.
The “Agreement[s] to Suspend Prescription” are clearly worded to provide for a period of suspension and do not use the term “waiver.” Each agreement provided a specific time period during which the “running of the period of prescription against the assessment or collection of any such tax due” was “suspended for a period of one year.” Because the agreements are unambiguous, there is no basis for considering the terminology used by the Department in a cover letter.
Based on the terms of the last “Agreement to Suspend Prescription,” the Department agreed not to “finally assess or bring suit for collection of such taxes prior to February 1, 2005.” The Department could institute suit between February 1, 2005, and December 31, 2005, but if the Department did so, Mosaic agreed that as “taxpayer,” it would not plead the defense of prescription during this period of time. Although Mosaic tries to infer such a waiver, the terms of the agreement do not provide that the Department waived its right to file suit after December 31, 2005.
The agreements clearly do not preclude Mosaic from pleading the defense of prescription to any claim for taxes filed after December 31, 2005. While | ^Mosaic is entitled to plead the prescription defense, the merit of the defense is to be determined by the applicable prescriptive period and La. C.C. art. 3472. There is no conflict between the terms of the contract and La. C.C. art. 3472.
The Department was entitled to file suit before the three-year prescriptive period ran; it did not waive this right by executing the “Agreement^ to Suspend.” The original agreement executed in September 2001 clearly states that “the running of the period of prescription ... is hereby suspended for a period of ONE YEAR from December 31, 2001.” (Emphasis added.) With the parties expressly providing for commencement of the suspension from December 31, 2001,[11] the last day of the three-year prescriptive period, the running of prescription was not suspended until that last day of the three-year prescriptive period or December 31, 2001. The subsequent agreements to suspend the running of prescription likewise focused on December 31 as the date from which prescription would be suspended. Therefore, when the period of suspension terminated upon the expiration of December 31, 2005, prescription commenced to run again,[12] with one day left of the three- *314 year prescriptive period, as suspended.[13]
Accordingly, the Department of Revenue’s January 3, 2006 filing was timely under the terms of the Hurricane Katrina legislation. See La. R.S. 11S9:5822(A).[14] Since the suspension lapsed upon the expiration of December 31, 2005, the remaining day of the three-year prescriptive period was subject to a limited suspension and/or extension during the period of August 26, 2005, through January 3, 2006. Therefore, the Department of Revenue had until January 3, 2006, to file this action. Furthermore, since January 1, 2006, fell on a Sunday and, in accordance with La. R.S. 1:55, Monday, January 2, 2006, was a legal holiday, the Department’s January 3, 2006 filing with the clerk of court’s office was timely. Thus, the trial court erred in concluding that the suit had prescribed.
B. Personal Jurisdiction
In reviewing a judgment on an exception of lack of personal jurisdiction, the factual findings underlying the judgment are reviewed for manifest error. The application of established rules of law to the facts, however, is a legal question, and thus, the legal issue of personal jurisdiction over a nonresident by a Louisiana court is subject to de novo review. Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 06-1736, p. 6 (La.4/11/07), 954 So.2d 120, 125. Based on our review of the record, we find no dispute as to the facts related to the jurisdictional issue before us, and thus, we review this matter de novo. Id. at 126.
The Louisiana long-arm statute, La. R.S. 13:3201, provides for the exercise of personal jurisdiction over a nonresident defendant, stating in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
Based on the language of Subsection B, the sole inquiry is whether the exercise of jurisdiction comports with constitutional due process. See Alonso v. Line, 02-2644, p. 6 (La.5/20/03), 846 So.2d 745, 750, cert. denied, 540 U.S. 967, 124 S.Ct. 434, 157 L.Ed.2d 311(2003).
The due process test, which was first enunciated in Int’l Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945), requires that to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the *315 forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The “minimum contacts” prong is satisfied by a single act or actions by which the defendant “purposefully avails itself of the privilege of conducting activities |T ¿within the forum state, thus invoking the benefits and protections of its laws.” Ruckstuhl v. Owens Corning Fiberglas Corp., 98-1126, p. 6 (La.4/13/99), 731 So.2d 881, 885, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). The nonresident’s “purposeful availment” must be such that the defendant “should reasonably anticipate being haled into court” in the forum state. Ruckstuhl, 98-1126 at p. 6, 731 So.2d at 885 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).
The second part of the due process test centers around the fairness of the assertion of jurisdiction. Once minimum contacts are established, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with “fair play and substantial justice.” Burger King Corp., 471 U.S. at 476, 105 S.Ct. at 2184. Thus, once the plaintiff meets his burden of proving minimum contacts, a presumption of reasonableness of jurisdiction arises and the burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum, de Reyes v. Marine Management and Corisulting, Ltd., 586 So.2d 103, 107 (La.1991). In determining this fundamental fairness issue, the relevant considerations are: (1) the defendant’s burden; (2) the forum state’s interest; (3) the plaintiffs interest in | Uiconvenient and effective relief; (4) the judicial system’s interest in efficient resolution of controversies; and (5) the state’s shared interest in furthering fundamental social policies. Southeast Wireless Network, Inc., 06-1736 at pp. 5-6, 954 So.2d at 125.
In its answer filed with this court, Mosaic urges that the Department cannot “bootstrap” onto Freeport’s contacts in Louisiana to justify the assertion of personal jurisdiction over Mosaic. Although it does not dispute that Freeport transacted business in this state, Mosaic asserts it is neither licensed nor registered with the Secretary of State to conduct business in Louisiana. Mosaic further contends in brief:
The only allegation against Mosaic is that it is legally responsible for the debts of [Freeport] under a statute [La. R.S. 12:115] relating to “successor liability” upon the merger of corporations. There is no allegation that Mosaic ... ever had any involvement with the specific business transactions which created the alleged tax liability on the part of [Freeport]....
The mere imposition, by statute, of successor liability is not sufficient to make Mosaic amenable to jurisdiction in personam. The Court must not confuse substantive law and the law relating to personal jurisdiction. The existence of a claim for successor liability does not equate to jurisdiction in personam. ...
The Department’s jurisdictional claim is based on the long-arm statute, La. R.S. 13:3201, and on La. R.S. 12:115, which provides in pertinent part, as follows:
Upon the effectiveness of the merger or consolidation, the effect thereof shall be that:
*316 A.The several parties to the joint agreement shall be one business, nonprofit or foreign corporation, which shall be
(1) In the case of merger, that one of the constituent business, [17nonprofit or foreign corporations into which it has been agreed that the others shall be merged, and which shall survive the merger for that purpose,
B. The separate existence of the constituent business, nonprofit and foreign corporations shall cease, except that of the surviving business, nonprofit or foreign corporation in the case of merger.
C. The surviving or new business, nonprofit or foreign corporation shall possess all the rights, privileges and franchises possessed by each of the former business, nonprofit and foreign corporations so merged or consolidated, except that a surviving or new business corporation shall not thereby acquire authority to engage in any business or exercise any right, or to engage in or to exercise any function or object for which a corporation may not be formed under this Chapter.
D. All of the property and assets of whatsoever kind or description of each of the constituent business, nonprofit or foreign corporations, and all debts due on whatever account to any of them, including subscriptions for shares and other choses in action belonging to any of them, shall be taken and be deemed to be transferred to, and vested in, the surviving or new business, nonprofit or foreign corporation without further act or deed.
E. The surviving or new business, nonprofit or foreign corporation shall be responsible for all of the liabilities and obligations of each of the business, nonprofit and foreign corporations merged or consolidated, in the same manner as if such surviving or new corporation had itself incurred such liabilities or obligations; but the liabilities of such constituent corporations or of their shareholders, members, directors or officers shall not be affected, nor shall the rights of the creditors thereof, or of any persons dealing with such corporations, be impaired by such merger or consolidation; and any claim existing, or action or proceeding pending, by or against any of such constituent corporations may be prosecuted to judgment as if such merger or consolidation had not taken place, or the surviving or new corporation may be proceeded against, or substituted, in place of such constituent corporation. (Emphasis added.)
118Thus, the issue presented is whether, for the purpose of satisfying Louisiana’s long-arm statute “minimum contacts” requirement, the undisputed significant forum contacts of the predecessor corporation, Freeport, can be imputed to the successor corporation, Mosaic (formerly IMC), by merger.
Numerous courts have held that a corporation may be subject to personal jurisdiction in a foreign forum if the contacts of its predecessors are constitutionally sufficient. These courts have asserted jurisdiction over successor corporations where the forum law would hold the successor corporation liable for the predecessor’s conduct in the forum state. See State of Idaho v. M.A. Hanna Co., 819 F.Supp. 1464, 1476-77 (D.Idaho 1993); Duris v. Erato Shipping, Inc., 684 F.2d 352 (6th Cir.1982), aff'd sub nom., Pallas Shipping Agency, Ltd. v. Duris, 461 U.S. 529, 103 S.Ct. 1991, 76 L.Ed.2d 120 (1983); Goffe v. Blake, 605 F.Supp. 1151 (D.Del.1985); Cole v. Caterpillar Machinery Corp., 562 F.Supp. 179 *317 (M.D.La.1983); Maryland Nat’l Bank v. Shaffer Stores Co., 240 F.Supp. 777 (D.Md.1965). Recognizing that a successor corporation by merger or consolidation is essentially the present corporate embodiment of the predecessor, these decisions have imputed the forum contacts of the predecessor to prevent formalistic changes from immunizing the successor from suit in the forum where its predecessor clearly would have been subject to personal jurisdiction. See Duris, 684 F.2d at 356. Since a successor corporation can avail itself of the benefits of our forum state in order to sue for monies owed its corporate predecessor, the successor corporation, who is able to derive benefits from the |19forum, should also be expected to answer for alleged liabilities of its predecessor in this forum. See Cole, 562 F.Supp. at 180. In fact, the merger itself has been found to constitute a sufficient minimum contact to support the exercise of personal jurisdiction over the successor corporation. Hagan v. Val-Hi, Inc., 484 N.W.2d 173, 177 (Iowa 1992).
Thus, based on these considerations and because La. R.S. 12:115 E would substantively operate to hold Mosaic liable for any Louisiana corporate tax liability of Free-port, we also deem it appropriate to impute Freeport’s contacts with this state to Mosaic for purposes of satisfying the “minimum contacts” requirement of our long-arm statute. We find it reasonable that a successor foreign corporation should reasonably expect to be called to answer to an action in a Louisiana court after it has merged with a foreign corporation that had sufficient minimum contacts with the State of Louisiana. See Burger King Corp., 471 U.S. at 471-72, 105 S.Ct. at 2181-82, 85 L.Ed.2d at 540-41; Hagan, 484 N.W.2d at 177.
At this point, the burden shifted to Mosaic to establish that jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant’s minimum contacts with the forum. See de Reyes, 586 So.2d at 107. Based on the record before us, Mosaic has not established that Louisiana’s exercise of jurisdiction to resolve this dispute would be unreasonable. Mosaic failed to establish any burden that would result from litigating in this state; this state has a significant public interest in being able to conveniently adjudicate |2oMosaic’s alleged Louisiana corporate income tax liabilities in this state; the courts of this state will most efficiently determine such liability; and Mosaic has not established that any social policies are hindered by requiring it to adjudicate this dispute in Louisiana. See Southeast Wireless Network, Inc., 06-1736 at pp. 6-7, 954 So.2d at 125. Thus, we find that notions of fair play and substantial justice are not offended by requiring Mosaic to defend this suit in a Louisiana court.
Accordingly, since we find that constitutional due process requirements have been met to support the exercise of personal jurisdiction over Mosaic, we find that the trial court properly denied Mosaic’s exception raising the objection of lack of personal jurisdiction.
C. Venue
Louisiana Revised Statutes 13:3203 provides, “A suit on a cause of action described in [La.] R.S. 13:3201 may be instituted in the parish where the plaintiff is domiciled, or in any parish of proper venue.” The domicile of the Department is in Baton Rouge. La. R.S. 36:451.
The parties do not dispute any of the facts pertaining to venue. Thus, whether East Baton Rouge Parish is a proper venue for this action presents a *318 question of law, which this court reviews de novo. See Price v. Roy O. Martin Lumber Co., 04-0227 (La.App. 1st Cir.4/27/05), 915 So.2d 816, 824, writ denied, 05-1390 (La.1/27/06), 922 So.2d 543.
In its answer to the appeal, Mosaic urges the trial court erred in denying its declinatory exception of improper venue. In its appellate brief, Mosaic contends, |2i“Venue is not conferred by La. R.S. 13:3203 because the action brought by [the Department] against Mosaic is not an action ‘described in La. R.S. 13:3201.’ ” As authority for its position, Mosaic cites Garcia v. Poseidon Shipping Co. Ltd., 99-0322 (La.App. 4th Cir.10/6/99), 746 So.2d 633, 636, writ denied, 99-3182 (La.1/28/00), 753 So.2d 203, which held that the language of La. R.S. 13:3203, specifying venue for “a suit on a cause of action described in [La.] R.S. 13:3201,” contemplates only the eight causes of action listed in Subsection A of La. R.S. 13:3201. Because the allegations of the petition assert that the alleged taxes are owed as a result of business conducted by Freeport prior to December 22, 1997, the date of Freeport’s merger into IMC (now Mosaic), Mosaic argues that the Department’s suit to collect taxes does not arise from any business transacted by IMC or Mosaic within Louisiana. Mosaic asserts that the cause of action must arise from one of the enumerated activities performed by the nonresident, not the nonresident’s predecessors in interest.
We find no merit in Mosaic’s contention that East Baton Rouge Parish is not a proper venue for this suit. Without reaching the issue of whether the venue provision of La. R.S. 13:3203 is limited to the causes of action listed in La. R.S. 13:3201 A, we find Section 3203 is applicable to the Department’s suit to collect taxes. It is undisputed that Freeport, prior to its merger with IMC (now Mosaic), transacted business in Louisiana. Thus, Mosaic, through its predecessor, Freeport, transacted business in this state within the meaning of La. R.S. 13:3201 A(l); jurisdiction is conferred by the long-arm statute, based on the imputation of ^Freeport’s conduct to Mosaic. Thus, venue is proper in East Baton Rouge Parish, as the parish where the Department is domiciled.
III. CONCLUSION
For these reasons, we find the Department’s suit is not prescribed, and we reverse the trial court’s October 22, 2007 judgment. Because we find the trial court had personal jurisdiction over Mosaic pursuant to the long-arm statute, La. R.S. 13:3201, and East Baton Rouge Parish is a proper venue for this suit, we affirm the trial court’s May 8, 2006 judgment. Accordingly, we remand this matter for further proceedings. Appeal costs are assessed to Mosaic Global Holdings, Inc.
MAY 26, 2006 JUDGMENT AFFIRMED; OCTOBER 22, 2007 JUDGMENT REVERSED; REMANDED.
DOWNING, J., concurs.

. In its answer, Mosaic also asserted that the trial court erred in overruling its dilatory exception raising the objection of vagueness. Mosaic's appellee brief does not brief this issue, however. According to the Uniform Rules-Louisiana Courts of Appeal, Rules 2-12.4 and 2-12.5, issues not briefed on appeal are deemed abandoned. Worthen v. DeLong, 99-1149, p. 4 n. 1 (La.App. 1st Cir.6/23/00), 763 So.2d 820, 823 n. 1.

. The Department asserted that its audit revealed that Mosaic owed $3,186,903.00, plus interest in the amount of $3,685,941.80 calculated through December 31, 2005, plus any *309 interest that becomes due under La. R.S. 47:1601 until the principal sum is paid.

. Although Mosaic also initially raised the objection of the insufficiency of service of process, the May 26, 2006 judgment ordered that this objection was "hereby deemed WITHDRAWN.” This objection is not at issue in this appeal.

. After the trial court overruled Mosaic’s dec-linatory exception raising the objection of improper venue, Mosaic filed an application for supervisory writs, which this court denied. Bridges v. Mosaic Global Holdings, Inc., 06-1076 (La.App. 1st Cir.7/24/06) (unpublished writ action).

.When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him or her, in addition to review of the final judgment. Rao v. Rao, 05-0059, p. 6 (La.App. 1st Cir. 11/4/05), 927 So.2d 356, 360, writ denied, 05-2453 (La.3/24/06), 925 So.2d 1232. Likewise, the appellee is entitled to seek such review pursuant to an answer. See La. C.C.P. art. 2133.

. The Louisiana Secretary of State’s records indicate that the merger occurred on February 6, 1998, but was "effective in home state on December 22, 1997

. Concerning the time and place for filing returns, La. R.S. 47:103(A)(1) provides, in pertinent part:
Corporation income tax returns. Returns for corporations on the basis of the calendar year shall be made and filed with the secretary at Baton Rouge, Louisiana, on or before the fifteenth day of April, following the close of the calendar year. Returns for corporations made on the basis of a fiscal year shall be made and filed with the secretary at Baton Rouge, Louisiana, on or before the fifteenth day of the fourth month following the close of the fiscal year.

.Regarding time of payment, La. R.S. 47:105(A) provides, in pertinent part:
The total amount of tax on a calendar or fiscal year income tax return shall be paid on the date the return is required by law to be filed determined without regard to any extension of time for filing the return.

. An IMC representative signed the agreement on September 11, 2001, and the Department representative signed it on September 26, 2001. Each of the four " Agreements] to Suspend Prescription” was signed by the IMC or Mosaic representative outside the state of Louisiana.

. The effect of an interruption of prescription differs from a suspension of prescription, in that when the interruption ceases, the time that had run before the interruption is not counted, whereas time that had accrued before the suspension is counted, and prescription commences to run again upon the termination of the period of suspension. See La. C.C. arts. 3466 and 3472. In re Smithson, 07-2262, p. 5 n. 2 (La.App. 1st Cir.6/6/08), 991 So.2d 1075, 1081 n. 2.

. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046.

. See La. C.C. arts. 3454 and 3472.

. La. C.C. art. 3471.

. Concerning the suspension and extension of prescription, La. R.S. 9:5822(A) provides:
All prescriptions, including liberative, acquisitive, and the prescription of nonuse, and all peremptive periods shall be subject to a limited suspension and/or extension during the time period of August 26, 2005, through January 3, 2006; however, the suspension and/or extension of these periods shall be limited and shall apply only if these periods would have otherwise lapsed during the time period of August 26, 2005, through January 3, 2006. This limited suspension and/or extension shall terminate on January 3, 2006, and any right, claim, or action which would have expired during the time period of August 26, 2005, through January 3, 2006, shall lapse on January 4, 2006.